IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

Name: James A. Marcum
Title: Executive Vice President

HOLLYWOOD MANAGEMENT COMPANY

Name: Donald A. Ekman
Title: Executive Vice President

WITNESS:

Name: Brad Williams

WITNESS:

Name: Brad Williams

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE OF THE EARLY BUYOUT OPTION RIDER

2

EARLY TERMINATION OPTION RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Early Termination Option Rider ("Rider") is made and entered into as of the 31st day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon Corporation, and Hollywood Management Company, and Oregon corporation (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES AGREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1 ("Schedule").

Provided that no Event of Default or event which, with the giving of notice or lapse of time, or both, would constitute an Event of Default, has occurred and is continuing, beginning from the first (1st) day of the thirteenth (13th) month following the Effective Date of the Schedule, upon thirty (30) days written notice to ORIX, Lessee may terminate the Schedule in full, but not in part, on the first Rental payment date immediately following such thirty (30) day period ("Termination Date"). Lessee shall pay to ORIX on or prior to the Termination Date the Lease Balance plus all Rent through and including the Termination Date, and all applicable sales, use, property and other taxes, and all other costs and expenses due and owing hereunder as determined by ORIX. In addition, in the event that Lessee exercises this early termination option Lessee shall pay to ORIX a Reinvestment Premium on or prior to the Termination Date as follows:

| Month | Reinvestment Premium |
|-------|----------------------|
| 1-12 | NA (no early termination option shall be permitted) |
| 13-24 | 2% of the Lease Balance |
| 25-36 | 1% of the Lease Balance |
| 37-48 | 0% |
| 49-60 | 0% |

Notwithstanding anything in the Master Lease Agreement, Schedule or any rider to the contrary, in the event that Lessee exercises its First Early Buyout Option (as defined in the Early Buyout Option Rider), in addition to the First Early Buyout Option Purchase Price (as defined in the Early Buyout Option Rider), the Reinvestment Premium shall be due and payable to ORIX as provided herein.

Lessee agrees that any sale, conveyance or transfer by Lessor pursuant hereto shall be all of Lessor's right, title and interest in and to all Equipment, and shall be AS IS, WHERE IS, WITHOUT WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, INCLUDING WARRANTY OF MERCHANTABILITY AND FITNESS FOR PURPOSE, and Lessee shall hold harmless and indemnify Lessor and ORIX from and against all claims, liabilities, losses and costs alleged against or incurred by Lessor and ORIX, including claims for property damage, personal injury or death to Lessee and/or third parties growing out of or resulting from the ownership, use or possession of the Equipment, or imposed upon, inclined or directed against Lessor and ORIX, whatsoever levied on, on account of, or as a consequence of the sale and purchase of the Equipment.

The terms of this Rider shall supersede and override any conflicting terms of the Schedule relating to the Equipment; otherwise, all of the terms and provisions of the Schedule shall remain in full force and effect.

[Signatures Continued Upon Next Page]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION          WITNESS:

_James A. Marcum_ (signature)                _Brad Williams_ (signature)
Name: James A. Marcum                        Name: Brad Williams
Title: Executive Vice President

HOLLYWOOD MANAGEMENT COMPANY                 WITNESS:

_Donald J. Ekman_ (signature)               _Brad Williams_ (signature)
Name: Donald J. Ekman                        Name: Brad Williams
Title: Executive Vice President

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

TRIX:

TRIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE OF THE EARLY TERMINATION OPTION RIDER

2

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION          WITNESS:

Name: _____               Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY                  WITNESS:

Name: _____               Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____Brett R. King_____
Title: _____Vice President_____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE OF THE EARLY TERMINATION OPTION RIDER

2

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION          WITNESS:

Name: _____          Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY          WITNESS:

Name: _____          Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____ F. R. Rucker _____
Title: _____ V.P. _____

EXECUTION PAGE OF THE EARLY TERMINATION OPTION RIDER

2

LEASE RETURN PROVISIONS RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Lease Return Provisions Rider ("Rider") is made and entered into as of the 31st day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon Corporation, and Hollywood Management Company, an Oregon corporation (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES AGREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1 ("Schedule").

Provided that Lessee has not elected to exercise any option to purchase the Equipment in accordance with the provisions of the Schedule, and Lessee has not exercised any other options provided under the Schedule, Lessee agrees that Lessee shall return all, and not less than all, Equipment covered by the Schedule, on or before the Expiration Date of the Term (which includes all Renewal Periods if the Term of this Schedule has been renewed) with respect thereto (defined as, for purposes herein, the "Return Date"). In such event, Lessee shall, on or before the Return Date, return all, and not less than all, Equipment covered by the Schedule to ORIX free and clear of any and all Liens (other than those arising by, through or under Lessor or ORIX) and Lessee shall, at Lessee's sole cost and expense, comply with the provisions that follow:

(a)  at least one hundred twenty (120) days prior to the Return Date, provide to ORIX a detailed inventory of each Item of Equipment and components thereof. The inventory shall include, but not be limited to, a listing of model and serial numbers for all components comprising any part of the Equipment as well as the location of the Equipment and the name, phone number and contact person at the location of the Equipment;

(b)  at least one hundred twenty (120) days prior to the Return Date, provide to ORIX the following documents (as appropriate): (1) one set of service manuals, blue prints, process flow diagrams and operating manuals including replacements and/or additions thereto, such that all documentation is completely up-to-date; and (2) one set of documents, detailing equipment configuration, operating requirements, maintenance records, and other technical data concerning the set-up and operation of each Item of Equipment, including replacements and/or additions thereto, such that all documentation is completely up-to-date;

(c)  at all reasonable times (which shall include, without limitation, all normal business hours) prior to the actual return thereof, make all of the Equipment available for on-site operational inspections by potential purchasers;

(d)  not more than thirty (30) days prior to the Return Date, cause the Equipment to be inspected by an authorized FAA inspection and repair facility approved by the manufacturer of the Equipment and acceptable to the ORIX ("Inspector"), including testing all performance characteristics, materials, airworthiness and compliance with all airworthiness directives and manufacturer's recommended service bulletins (including, but not limited to, the spectromic oil analysis test) in the manner prescribed by the manufacturer and approved by the FAA and cause the Inspector to provide to ORIX a written report detailing the results of such inspection and testing and necessary and recommended replacements and repairs;

(e)  as of the Return Date, make all necessary or recommended replacements and proper repairs (using procedures prescribed by the manufacturer and approved by the FAA) detailed in the report provided pursuant to the preceding clause (d) and otherwise to cause each Item of Equipment to conform to the condition required under the Schedule and this Rider;

(f)  as of the Return Date, cause the Aircraft to be certified by the FAA as an airworthy aircraft;

(g)  as of the Return Date, cause the Equipment to be free and clear of all logos or other identifying marks other than the U.S. Identifying Mark;

(h)  as of the Return Date, cause each Item of Equipment to be maintained in a clean and cosmetically acceptable condition, and otherwise in such condition so that such Equipment may be immediately placed in service by a new operator, buyer or lessee;

(i)  as of the Return Date, properly remove and treat all rust and corrosion from each Item of Equipment;

(j)  as of the Return Date, ensure that each Item of Equipment has all component parts in good operating condition, that all of those component parts meet or exceed the manufacturer's minimum recommended performance and operational specifications (unless improved or updated during the Term thereof), and that each Item of Equipment complies with all federal, state or local governmental rules, regulations and other requirements (including, all rules, regulations and other requirements of the FAA), and industry standards then in effect;

(k)  as of the Return Date, ensure that all tires required for the operation of each Item Equipment, if any, have matched tread design, be of the same size (unless otherwise specified by the manufacturer of such Equipment), in safe operating condition and have at least fifty percent (50%) of the original tread remaining with no sidewall or casing damage or cuts;

(l) cause each Item of Equipment to be delivered to ORIX and certified as follows: (1) such Equipment shall be returned with a certificate supplied by the Inspector certifying that the Equipment is in good condition and is airworthy and, where applicable, eligible for the manufacturer's maintenance plan, which certificate of eligibility shall be transferable to another operator of such Equipment; and (2) Lessee shall transport such Equipment in a manner consistent with the manufacturer's recommendations and practices;

(m) on or before the Return Date, cause each Item of Equipment to be delivered to ORIX at such location in the continental United States as ORIX may select;

(n) upon ORIX's request, cause to be provided to ORIX, storage suitable to ORIX, for the period between the Return Date and the date that any Item of Equipment is delivered to ORIX at the locations selected by ORIX, which period shall not exceed one hundred twenty (120) days. Notwithstanding anything herein to the contrary, all costs and expenses associated with the storage of the Equipment shall be borne by ORIX, and Lessee shall have no liability to pay such costs and expenses in this regard;

(o) during any period that Lessee remains in possession of any Item of Equipment and during any storage period as described above, cooperate with ORIX in attempting to re-market such Equipment to prospective third party purchasers or lessees and take such actions as ORIX may reasonably request to facilitate such remarketing. Without limitation of the foregoing, for so long as the Equipment remains in the possession of Lessee, Lessee shall permit ORIX, during normal business hours, to display and demonstrate such Equipment to the prospective purchasers or lessees on Lessee's premises (or at the storage facility, as applicable), and keep each such Equipment fully operational with all required power and/or fuel supplies available to allow such demonstration. In the event that any auction or other public sale of such Equipment is deemed necessary or advisable by ORIX, Lessee agrees that such auction or public sale may be held on Lessee's premises or the storage facility, as applicable. Notwithstanding anything herein to the contrary, all costs and expenses associated with the remarketing of the Equipment shall be borne by ORIX, and Lessee shall have no liability to pay such costs and expenses in this regard;

Except as noted otherwise herein, all costs of the foregoing shall be the sole responsibility of the Lessee.

In the event that Lessee fails to satisfy any of the requirements and conditions of this Rider to the sole satisfaction of ORIX, Lessee shall pay to ORIX, on the Return Date, an amount equal to the total cost of satisfying the foregoing provisions with respect to each Item of Equipment (regardless of whether or not ORIX actually incur the cost of satisfying such provisions). The cost of satisfying the above provisions shall be determined by an independent qualified appraiser selected by ORIX in their sole discretion. All costs of the foregoing shall be the sole responsibility of the Lessee.

Upon return of the Equipment, or at ORIX's request during any storage period pursuant to paragraph (n) above, an independent inspector acceptable to ORIX shall inspect the Equipment for the purpose of determining the Equipment's compliance with the terms and conditions of the Lease and/or the repairs, overhauls, inspections, additions, replacements, maintenance and engine log entries, if any, which are necessary to place the Equipment in the condition required by the Schedule.

At the time of the return of the Equipment, all Life Limited Components must have no less than 50% of the remaining Useful Life for such components. "Life Limited Components" shall mean major components of the Equipment for which the FAA or the manufacturer has established specifications or criteria for Useful Life including, but not limited to, the airframe, the pressure vessel, the engines (both hot and cold sections), transmissions, gear boxes, hydraulic modules, shafts and all drive-train components, with respect to the major components of the Equipment, "Useful Life" shall mean the FAA's or the manufacturer's objective specifications or criteria for the time or cycles between recommended replacement, overhaul, inspection or rebuild of such components or for wear and tear requiring the replacement, overhaul, inspection or rebuild of such components (and shall not include specifications or criteria for specific operators or a group of operators). The determination of remaining Useful Life of Life Limited Components shall refer to such applicable times (or cycles) which are in accordance with the then approved maintenance and inspection program authorized by and performed to both the FAA's requirements and the respective manufacturers' requirements and standards.

For any Life Limited Component which does not have 50% of the remaining Useful Life at the time of the return of the Equipment, Lessee shall, on the Return Date, pay ORIX in accordance with the applicable formula below:

(1) If Useful Life of a Life Limited Component is measured by wear and tear, then the formula is:

Z times the following: A minus 50%

(2) If Useful Life of a Life Limited Component is measured by time or by cycles of use, then the formula is:

Z times the following fraction: $\dfrac{Y \text{ minus } .5X}{X}$

(3) The above formula components are defined as follows:

Z = The then current cost to ORIX of the greater of the replacement, overhaul, inspection or rebuild of the Life Limited Component

A = The amount of wear and tear of the Life Limited Component expressed as a percentage as determined by the manufacturer or a qualified inspector of the Equipment.

X = The total allowable time or cycles between replacement, overhaul, inspection or rebuild of the Life Limited Component

Y = The total time or cycles since the Life Limited Component was new or since the last replacement, overhaul, inspection or rebuild of the Life Limited Component.

The required inspection and component reconciliation report ("Return Report") shall be provided to ORIX not later than thirty (30) days following return of the Equipment to ORIX (the "Reconciliation Period") and all payments to be made by Lessee as a result thereof shall be made by Lessee not later than ten (10) days following receipt of the Return Report.

Lessee agrees to pay all fees, charges, insurance premiums (so long as the Equipment is in Lessee's control), costs and expenses related to the required inspection and component reconciliation to determine the Equipment's compliance with the Schedule and Lessee shall pay for all repairs and replacements necessary to place the Equipment in the condition required by Paragraph 2(a) above, which repairs and replacements shall be completed immediately.

During any period of time from the Return Date until each Item of Equipment is actually returned to ORIX in accordance with the provisions hereof ("Holdover Term"), Lessee agrees to pay ORIX monthly rent, in advance for each month or any part of a month of the Holdover Term, in an amount equal to one hundred and twenty five percent (125%) of the highest periodic Rent during the Term with respect to such Equipment. Notwithstanding the foregoing, the term "Holdover Term" shall not include the storage period as described in section (n) hereof.

Upon the early termination or cancellation of the Schedule and provided Lessee has not exercised any option to purchase the Equipment that Lessee may have, then Lessee shall return all, and not less than all, of the Equipment to ORIX free and clear of any and all Liens (other than those arising by, through or under Lessor or ORIX) and, at Lessee's sole cost and expense, comply with the foregoing provisions provided, however, the time for complying with those provisions shall be the earlier of (1) as soon as practicable following such termination or cancellation or (2) thirty (30) days after such termination or cancellation.

Without in any way limiting anything in the Schedule, in addition to any other right or remedy Lessor or ORIX may have under the Schedule or otherwise, if Lessee fails for any reason to comply with any of its obligations under this Rider respecting the return of the Equipment, then Lessor and ORIX shall have the right, but not the obligation, to take or cause to be taken any actions it deems necessary or appropriate to cause the Equipment to be returned to ORIX in the conditions specified in this Rider and ORIX may charge Lessee for any and all costs and expenses in connection therewith ("Reconditioning Expense"). Lessee, upon demand by ORIX, shall immediately pay and reimburse ORIX any Reconditioning Expense incurred by ORIX.

The terms of this Rider shall supersede and override any conflicting terms of the Schedule relating to the Equipment; otherwise, all of the terms and provisions of the Schedule shall remain in full force and effect.

[Signatures Continued Upon Next Page]

    IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION    WITNESS:

Name: _____        Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY    WITNESS:

Name: _____        Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE OF THE LEASE RETURN PROVISIONS RIDER

4

N WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the
ove written.

OOD ENTERTAINMENT CORPORATION          WITNESS:

_____
_____          Name: _____

OOD MANAGEMENT COMPANY          WITNESS:

_____
_____          Name: _____

ARGO BANK NORTHWEST, N.A.
Security Bank, National Association,
under the Trust Agreement
ch 28, 2001

_____
Brett R. King
Vice President

ANCIAL SERVICES, INC.

_____
_____

EXECUTION PAGE OF THE LEASE RETURN PROVISIONS RIDER

4

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

Name: James A. Marcum
Title: Executive Vice President

HOLLYWOOD MANAGEMENT COMPANY

Name: Donald J. Ekman
Title: Executive Vice President

WITNESS:

Name: Brad Williams

WITNESS:

Name: Brad Williams

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE OF THE LEASE RETURN PROVISIONS RIDER

5

STIPULATED LOSS VALUE RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Stipulated Loss Value Rider ("Rider") is made and entered into as of the 31ˢᵗ day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National Association ("Wells Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon corporation, and Hollywood Management Company, and Oregon corporation (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES AGREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1 ("Schedule").

The "Stipulated Loss Value" for the Equipment shall equal the original Equipment Cost multiplied by the factor reflected on SCHEDULE A attached hereto corresponding to the monthly rental in which payment of the Stipulated Loss Value is due, plus the Basic Rent due on such payment date, if applicable.

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:                                          WITNESS:

HOLLYWOOD ENTERTAINMENT CORPORATION

*[signature]*                                    *[signature]*
Name: James A. Marcum                            Name: Brad Williams
Title: Executive Vice President

HOLLYWOOD MANAGEMENT COMPANY                     WITNESS:

*[signature]*                                    *[signature]*
Name: Donald J. Ekman                            Name: Brad Williams
Title: Executive Vice President

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
F/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

_____
Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

_____
Name: _____
Title: _____

EXCUTION PAGE TO THE STIPULATED LOSS VALUES RIDER

STIPULATED LOSS VALUE RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Stipulated Loss Value Rider ("Rider") is made and entered into as of the 31st day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon corporation, and Hollywood Management Company, and Oregon corporation (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES AGREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1 ("Schedule").

The "Stipulated Loss Value" for the Equipment shall equal the original Equipment Cost multiplied by the factor reflected on SCHEDULE A attached hereto corresponding to the monthly rental in which payment of the Stipulated Loss Value is due, plus the Basic Rent due on such payment date, if applicable.

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:                                      WITNESS:

HOLLYWOOD ENTERTAINMENT CORPORATION

                                             Name: _____

Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY                 WITNESS:


                                             Name: _____

Name: _____
Title: _____


LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
F/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____ Brett R. King
               Vice President


ORIX:

ORIX FINANCIAL SERVICES, INC.


Name: _____
Title: _____

EXECUTION PAGE TO THE STIPULATED LOSS VALUES RIDER

STIPULATED LOSS VALUE RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY ̲3̲1̲ˢᵗ̲, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Stipulated Loss Value Rider ("Rider") is made and entered into as of the ̲2̲1̲ˢᵗ̲ day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon corporation, and Hollywood Management Company, and Oregon corporation (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES AGREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1 ("Schedule").

The "Stipulated Loss Value" for the Equipment shall equal the original Equipment Cost multiplied by the factor reflected on SCHEDULE A attached hereto corresponding to the monthly rental in which payment of the Stipulated Loss Value is due, plus the Basic Rent due on such payment date, if applicable.

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION          WITNESS:


Name: _____             Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY                 WITNESS:


Name: _____             Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001


Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

_____
Name: _____
Title: _____

EXCUTION PAGE TO THE STIPULATED LOSS VALUES RIDER

## SCHEDULE A

| PERIOD | FACTOR | PERIOD | FACTOR |
|--------|--------|--------|--------|
| 1 | 105.00% | 31 | 52.50% |
| 2 | 103.25% | 32 | 51.27% |
| 3 | 101.50% | 33 | 50.05% |
| 4 | 99.75% | 34 | 48.82% |
| 5 | 98.00% | 35 | 47.60% |
| 6 | 96.25% | 36 | 46.37% |
| 7 | 94.50% | 37 | 45.15% |
| 8 | 92.75% | 38 | 43.92% |
| 9 | 91.00% | 39 | 42.70% |
| 10 | 89.25% | 40 | 41.47% |
| 11 | 87.50% | 41 | 40.25% |
| 12 | 85.75% | 42 | 39.02% |
| 13 | 84.00% | 43 | 37.80% |
| 14 | 82.25% | 44 | 36.57% |
| 15 | 80.50% | 45 | 35.35% |
| 16 | 78.75% | 46 | 34.12% |
| 17 | 77.00% | 47 | 32.90% |
| 18 | 75.25% | 48 | 31.67% |
| 19 | 73.50% | 49 | 30.45% |
| 20 | 71.75% | 50 | 29.22% |
| 21 | 70.00% | 51 | 28.00% |
| 22 | 68.25% | 52 | 26.77% |
| 23 | 66.50% | 53 | 25.55% |
| 24 | 64.75% | 54 | 24.32% |
| 25 | 63.00% | 55 | 23.10% |
| 26 | 61.25% | 56 | 21.87% |
| 27 | 59.50% | 57 | 20.65% |
| 28 | 57.75% | 58 | 19.42% |
| 29 | 56.00% | 59 | 18.20% |
| 30 | 54.25% | 60 | 16.97% |

_____
Lessee's Initials

_____
Lessor's Initials

_____
ORIX's Initials

## SCHEDULE A

| PERIOD | FACTOR | PERIOD | FACTOR |
|--------|--------|--------|--------|
| 1 | 105.00% | 31 | 52.50% |
| 2 | 103.25% | 32 | 51.27% |
| 3 | 101.50% | 33 | 50.05% |
| 4 | 99.75% | 34 | 48.82% |
| 5 | 98.00% | 35 | 47.60% |
| 6 | 96.25% | 36 | 46.37% |
| 7 | 94.50% | 37 | 45.15% |
| 8 | 92.75% | 38 | 43.92% |
| 9 | 91.00% | 39 | 42.70% |
| 10 | 89.25% | 40 | 41.47% |
| 11 | 87.50% | 41 | 40.25% |
| 12 | 85.75% | 42 | 39.02% |
| 13 | 84.00% | 43 | 37.80% |
| 14 | 82.25% | 44 | 36.57% |
| 15 | 80.50% | 45 | 35.35% |
| 16 | 78.75% | 46 | 34.12% |
| 17 | 77.00% | 47 | 32.90% |
| 18 | 75.25% | 48 | 31.67% |
| 19 | 73.50% | 49 | 30.45% |
| 20 | 71.75% | 50 | 29.22% |
| 21 | 70.00% | 51 | 28.00% |
| 22 | 68.25% | 52 | 26.77% |
| 23 | 66.50% | 53 | 25.55% |
| 24 | 64.75% | 54 | 24.32% |
| 25 | 63.00% | 55 | 23.10% |
| 26 | 61.25% | 56 | 21.87% |
| 27 | 59.50% | 57 | 20.65% |
| 28 | 57.75% | 58 | 19.42% |
| 29 | 56.00% | 59 | 18.20% |
| 30 | 54.25% | 60 | 16.97% |

Lessee's Initials

Lessor's Initials

ORIX's Initials

All Factor info. deleted from
PAB filing for Confidentiality reasons (including
the initial $ rates)

PROPERTY, SALES AND USE TAX PAYMENT RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

his Property, Sales and Use Tax Payment Rider ("Rider") is made and entered into as of the 31st day of May, 2002, by and among Wells Fargo Bank
est, N.A. f/k/a First Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between
Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL
CES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon Corporation, and Hollywood Management
ny (collectively, "Lessee").

N CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES
E AS FOLLOWS:

apitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1
dule").

otwithstanding any provision to the contrary in the Schedule, Lessee shall make all payments of property, ad valorem, sales and uses taxes that may be
ome due with respect to the Equipment directly to the appropriate taxing authority prior to the due date thereof. All such payments shall be made in a
manner. In addition, Lessee shall file any report, declaration, return or waiver in connection with any such taxes with the appropriate taxing authority.
ch documents shall be filed in a timely manner. Upon request by ORIX, Lessee shall provide ORIX, with copies of all such documentation and proof of
ent of all such taxes, fees and Impositions (i.e., copies of tax returns/reports and canceled checks). Lessee shall indemnify, defend and hold harmless
r and ORIX from and against any such taxes, and any penalties, fines and interest in connection therewith, and any other liabilities or damages that
r and ORIX may incur arising out of the failure of Lessee to pay when due such taxes.

The terms and conditions included in this Rider shall survive the termination, expiration or cancellation of the Schedule. Lessee hereby agrees that
e to comply with the terms hereof shall constitute an Event of Default under the Schedule.

[Signatures Continued Upon Next Page]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

Name: James A. Marcum

Title: Executive Vice President

WITNESS:

Name: Brad Williams

HOLLYWOOD MANAGEMENT COMPANY

Name: Donald J. Ekholt

Title: Executive Vice President

WITNESS:

Name: Brad Williams

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____

Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____

Title: _____

EXECUTION PAGE TO THE PROPERTY, SALES AND USE TAX PAYMENT RIDER

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION   WITNESS:

Name: _____         Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY      WITNESS:

Name: _____         Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____Brett R. King_____
Title: _____Vice President_____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE TO THE PROPERTY, SALES AND USE TAX PAYMENT RIDER

2

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION          WITNESS:

Name: _____          Name: _____
Title: _____


HOLLYWOOD MANAGEMENT COMPANY          WITNESS:

Name: _____          Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001


Name: _____
Title: _____


ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _F R Rucker_____
Title: _VP_____


EXECUTION PAGE TO THE PROPERTY, SALES AND USE TAX PAYMENT RIDER

CO-LESSEE LETTER
TO
MASTER LEASE AGREEMENT NUMBER 391
DATED MAY 31 , 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Co-Lessee Letter is made and entered into as of the 31st day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon Corporation, and Hollywood Management Company (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE AGREEMENT NUMBER 391, THE PARTIES AGREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Agreement Number 391 ("Lease Agreement").

On the 31st day of May, 2002, the Lessees entered into a lease transaction with Lessor and ORIX, as evidenced by the Lease Agreement, a schedule or schedules arising under the Lease Agreement, executed and delivered by Lessee to Lessor and ORIX, whether now existing or hereafter created (each individually a "Schedule" and collectively, the "Schedules") and other ancillary documents (together with the Lease Agreement and Schedules, as such documents may be amended, modified and supplemented from time to time, hereinafter collectively referred to as "Lease Documents").

Lessees are providing this letter agreement (the "Agreement") as part of the inducement for Lessor and ORIX to enter into the Lease Documents.

Each Lessee acknowledges and agrees that it has independently determined that, in light of the conduct of the business of Lessees as an integrated operation and a common enterprise that requires the leasing of equipment on a basis permitting the availability of credit to each Lessee, it will benefit specifically, directly and materially from the lease of the Equipment contemplated by the Lease Documents ("Lease(s)") and that the value of the consideration it is receiving from the Lease Documents is reasonably worth at least the sum at which it is taken by such Lessee.

It is expressly agreed and understood by each Lessee that Lessor and ORIX shall have no responsibility to inquire into the apportionment, allocation, or disposition of any Lease(s) made to Lessees. All Lease(s) are to be made for the collective account of Lessees.

Each Lessee hereby jointly, severally, irrevocably and unconditionally guarantees to Lessor and ORIX the full and prompt payment of each of the obligations under the Lease Documents by each other Lessee and the performance by each other Lessee of such Lessee's obligations hereunder and thereunder and shall fully and promptly perform all obligations with respect to the Rent and other obligations hereunder and under the Lease Documents, if any, and agrees, as a primary obligation, to indemnify Lessor and ORIX on demand for and against any loss incurred by Lessor or ORIX as a result of any voidable, unenforceable, or ineffective provision herein or in any of the Lease Documents, for any reason whatsoever, whether or not known to Lessor, ORIX or any person, firm or entity, the amount of such loss being in the amount to which Lessor or ORIX would otherwise have been entitled to recover from Lessees. This is a guaranty of payment and of performance and not of collection.

Each Lessee consents and agrees that Lessor and ORIX may, at any time and from time to time, without notice or demand, except as otherwise required herein, whether before or after any actual or purported termination, repudiation or revocation of any of the Lease Documents, including this Agreement, by any one or more Lessees, and without affecting the enforceability or continuing effectiveness hereof as to each Lessee, agree with one or more Lessee or any other person, firm or entity to: (i) supplement, restate, compromise, modify, amend, increase, decrease, extend, discharge, renew, accelerate or otherwise change the time for payment or the terms of any obligations with respect to the Rent or any part thereof; (ii) supplement, restate, modify, amend, increase, decrease or waive, or enter into or give any agreement, approval or consent with respect to, obligations due under any Schedule or any part thereof, or any of the Lease Documents or any additional guarantees, or any condition, covenant, default, remedy, right, representation or term thereof or thereunder; (iii) accept new or additional instruments, documents or agreements in exchange for or relative to any of the Lease Documents or the obligations due under any Schedule or any part thereof; (iv) accept partial payments on the Rent; (v) receive and hold additional guarantees for the Rent or any part thereof; (vi) release, reconvey, terminate, waive, abandon, exchange, substitute, transfer or enforce any guarantees, and to take possession of any Item and terminate or cancel the Lease as Lessor and ORX in their sole and absolute discretion may determine; (vii) release any person, firm or entity from any personal liability with respect to the Rent or any part thereof; (viii) settle, discharge, release on terms satisfactory to the Lessor and ORIX or by operation of applicable laws or otherwise liquidate or enforce any Rent, consent to the transfer of any security and bid and purchase at any sale; (ix) consent to the merger, change or any other restructuring or termination of the corporate existence of any Lessee and correspondingly restructure the Rent, and any such merger, change, restructuring or termination shall not affect the liability of any Lessee or the continuing effectiveness hereof, or the enforceability hereof with respect to all or any part of the Rent; or (x) take or refrain from taking any other action as Lessor or ORIX, in their sole and absolute discretion, may elect, or any or some of the foregoing.

Lessor or ORIX may enforce this Agreement independently as to each Lessee and independently of any other remedy or security Lessor or ORIX at any time may have or hold in connection with the Rent or the Lease Documents, or both, and it shall not be necessary for Lessor and ORIX to exhaust any remedy before proceeding to enforce this Agreement. Each Lessee expressly waives any right to require Lessor or ORIX to proceed against any other Lessee and agrees that Lessor or ORIX may proceed against one or more Lessees in such order as it shall determine in its sole and absolute discretion.

Lessor or ORIX may file a separate action or actions against any Lessee, whether such action is brought or prosecuted against any other person, firm or entity, or whether any other person, firm or entity is joined in any such action or actions. Each Lessee agrees that Lessor or ORIX and any Lessee and any affiliate of any Lessee may deal with each other in connection with the Rent or otherwise, or alter any contracts or agreements now or hereafter existing between any of them, in any manner whatsoever, all without in any way altering or affecting the continuing efficacy of this Agreement.

Lessor and ORIX's rights hereunder shall be reinstated and revived, and the enforceability of this Agreement shall continue, with respect to any amount at any time paid on account of the Rent that thereafter shall be required to be restored or returned by Lessor or ORIX, all as though such amount had not been paid. The rights of Lessor and ORIX created or granted herein and the enforceability of this Agreement at all times shall remain effective to cover the full amount of all the Rent even though the Rent, including any part thereof or any guaranty therefor, may be or hereafter may become invalid or otherwise unenforceable as against any Lessee and whether or not any other Lessee shall have any personal liability with respect thereto.

To the maximum extent permitted by applicable law, each Lessee expressly waives any and all defenses now or hereafter arising or asserted by reason of (i) any disability or other defense of any other Lessee with respect to the Rent, (ii) the unenforceability or invalidity of any security or guaranty for the Rent or the lack of perfection or continuing perfection or failure of priority of any security for the Rent, (iii) the cessation for any cause whatsoever of the liability of any other Lessee (other than by reason of the full payment and performance of all Rent), (iv) any failure of Lessor or ORIX to give notice of sale or other disposition of the Equipment to any Lessee or any other person, firm or entity or any defect in any notice that may be given in connection with any sale or disposition of the Equipment, (v) any failure of Lessor or ORIX to comply with applicable law in connection with the sale or other disposition of the Equipment, including any failure of Lessor or ORIX to conduct a commercially reasonable sale or other disposition of any of the Equipment, (vi) any act or omission of Lessor, ORIX or others that directly or indirectly results in or aids the discharge or release of any Lessee, or the Rent or any security or guaranty therefor by operation of law or otherwise, (vii) any law which provides that the obligation of a surety or guarantor must neither be larger in amount nor in other respects more burdensome than that of the principal or which reduces a surety's or guarantor's obligation in proportion to the principal obligation, (viii) any failure of Lessor or ORIX to file or enforce a claim in any bankruptcy or other proceeding with respect to any person, firm or entity, (ix) the election by Lessor or ORIX of the application or non-application of Section 1111 (b)(2) of the Federal Bankruptcy Code, (x) any extension of credit or the grant of any lien under Section 364 of the Federal Bankruptcy Code, (xi) any use of cash collateral under Section 363 of the Federal Bankruptcy Code, (xii) any agreement or stipulation with respect to the provision of adequate protection in any bankruptcy proceeding of any person, firm or entity, (xiv) the avoidance of any lien in favor of Lessor or ORIX for any reason, or (xiii) any action taken by Lessor or ORIX that is authorized by this Agreement or any Lease Document. Until such time, if any, as all of the Rent has been paid and performed in full and no portion of any commitment of Lessor and ORIX to any Lessee under any Lease Document remains in effect, no Lessee shall have any right of subrogation, contribution, reimbursement or indemnity, and each Lessee expressly waives any right to enforce any remedy that Lessee now has or hereafter may have against any other person, firm or entity and waives the benefit of, or any right to participate in, any Equipment now or hereafter held by Lessor or ORIX. Each Lessee expressly waives all presentments, demands for payment or performance, notices of nonpayment, notices of intent to accelerate, notices of acceleration and notices of nonperformance, protests, notices of protest, notices of dishonor and all other notices or demands of any kind or nature whatsoever with respect to the Rent, and all notices of acceptance of this Agreement or of the existence, creation or incurring of new or additional Rent.

To the fullest extent permitted by applicable law, each Lessee expressly waives any suretyship defenses to the enforcement of this Agreement or any rights of Lessor and ORIX created or granted hereby or to the recovery by any such person, firm or entity against any Lessee, or any other person, firm or entity liable therefor of any deficiency after a judicial or nonjudicial foreclosure or sale, even though such a foreclosure or sale may impair the subrogation rights of the Lessees and may preclude Lessee from obtaining reimbursement or contribution from the other Lessee.

Each Lessee warrants and agrees that each of the waivers and consents set forth herein are made after consultation with legal counsel and with full knowledge of their significance and consequences, with the understanding that events giving rise to any defense or right waived may diminish, destroy or otherwise adversely affect rights which Lessee otherwise may have against the other Lessee, Lessor, ORIX or others, or against the Equipment, and that, under the circumstances, the waivers and consents herein given are reasonable and not contrary to public policy or law. If any of the waivers or consents herein are determined to be contrary to any applicable law or public policy, such waivers and consents shall be effective to the maximum extent permitted by law.

No delay or failure on the part of Lessor or ORIX in exercising any right or remedy shall operate as a waiver thereof, and no single or partial exercise by Lessor or ORIX or any right or remedy shall preclude other further exercise thereof or the existence of any other right or remedy.

Each Lessee represents and warrants to Lessor and ORIX that (i) such Lessee has established adequate means of obtaining from the other Lessee on a continuing basis financial and other information pertaining to the business, operations, and condition (financial and otherwise) of the other Lessee, and its property, (ii) such Lessee now is and hereafter will be completely familiar with the business, operations and condition (financial and otherwise) of the other Lessee, and its property. Each Lessee hereby waives and relinquishes any duty on the part of Lessor or ORIX to disclose to such Lessee any matter, fact or thing relating to the business, operations or condition (financial or otherwise) of the other Lessee, or its property, whether now or hereafter known by Lessor or ORIX during the term of this Agreement, and (iii) if any Lessee is a corporation, by executing and delivering this Agreement, it and the officers thereof signing on its behalf represent and warrant that the execution and delivery of this Agreement has been duly authorized by all necessary and appropriate corporate and shareholder action.

Each and every right granted to Lessor and ORIX hereunder or under any of the Lease Documents or in connection herewith or allowed by law or in equity shall be cumulative and may be exercised from time to time. No failure on the part of Lessor or ORIX to exercise and no delay in exercising any right shall operate as a waiver thereof.

THIS WRITTEN AGREEMENT, THE NOTE, THE OTHER LEASE DOCUMENTS, AND THE INSTRUMENTS AND DOCUMENTS EXECUTED IN CONNECTION HEREWITH, REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.

THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.

Acceptance and notice of acceptance of this Agreement by Lessor and ORIX are expressly waived by each Lessee, it being understood that Lessor and ORIX are relying hereon in entering into the Lease Documents.

[Signatures Continued Upon Next Page]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Agreement to be duly executed by their authorized officers as of the date first written above.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION    WITNESS:

Name: _____    Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY    WITNESS:

Name: _____    Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _F. R. Rucker_____
Title: _VP_____

EXECUTION PAGE OF THE CO-LESSEE LETTER

3

IN WITNESS WHEREOF, the parties hereto have executed or caused this Agreement to be duly executed by their authorized officers as of the date first written above.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION          WITNESS:

Name: _____              Name: _____
Title: _____


HOLLYWOOD MANAGEMENT COMPANY                  WITNESS:

Name: _____              Name: _____
Title: _____


LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____
        Brett R. King
        Vice President


ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____


EXECUTION PAGE OF THE CO-LESSEE LETTER

3

'TNESS WHEREOF, the parties hereto have executed or caused this Agreement to be duly executed by their authorized officers as of the
above.

) ENTERTAINMENT CORPORATION        WITNESS:

_es A. Marcum
Eve Vice President                 Name: _____

) MANAGEMENT COMPANY               WITNESS:

_ J. Erman                          Brad Williams
e Vice President                   Name: Brad Williams

O BANK NORTHWEST, N.A.
rity Bank, National Association,
r the Trust Agreement
, 2001

IAL SERVICES, INC.

EXECUTION PAGE OF THE CO-LESSEE LETTER

3

# EXHIBIT

# B

AERO AIR *at the*
PORTLAND-HILLSBORO AIRPORT
2050 NE 25TH AVENUE
HILLSBORO, OR 97124

TOLL FREE 800.448.2376
TEL 503.640.3711
FAX 503.681.6513
WWW.AEROAIR.COM



**By Facsimile and Certified Mail, return receipt requested**

July 26, 2007

Mike Herring
Vice President/Aviation Manager
Movie Gallery, Inc.
900 West Main Street
Dothan, AL 36301

   Re:    **Gulfstream G-IISP—Notice of Lien Rights and Storage Fees**

Dear Mr. Herring,

   You notified us yesterday that Movie Gallery will not or cannot pay for the maintenance and repairs that Movie Gallery authorized, and which Aero Air has performed, on the Gulfstream G-IISP aircraft, serial number 027, registered as N227TS ( the Aircraft). As a result, Aero has stopped all work on the Aircraft, effective today.

   Enclosed is the invoice for all parts, labor and outside services performed on the Aircraft in the amount of $396,951.51. This amount is due and payable in full immediately. Effective today, Aero will charge interest at the rate of 1.5% per month on the unpaid balance on the account. Also, beginning today, Aero will charge a storage fee of $250.00 per day for storing the Aircraft at Aero. Aero will maintain insurance on the aircraft through July 31, 2007. After that date, Aero will no longer provide insurance coverage for Aircraft.

   In accordance with Aero's possessory lien rights under ORS 87.152, all maintenance and repair costs, interest, and storage fees must be paid in full before Aero will relinquish possession of the Aircraft. Furthermore, the Aircraft is not airworthy and may not legally be flown. If these amounts remain unpaid after 60 days from today's date, Aero intends to sell the Aircraft at a foreclosure sale in accordance with its statutory lien rights in order to satisfy the debt owing on the Aircraft.

Respectfully,

*Jeffrey J. Tobolski*

Jeffrey J. Tobolski
Vice President – Operations.

Cc:    Leasing Company (by Facsimile and Certified Mail, return receipt requested)

# EXHIBIT

# C

LAW OFFICES

# GEBHARDT & SMITH LLP

SUITE 2200
ONE SOUTH STREET
BALTIMORE, MARYLAND 21202-3281
TELEPHONE: (410) 752-5830
FACSIMILE: (410) 385-5119

WRITER'S DIRECT DIAL NUMBER:

(410) 385-5072

WRITER'S E-MAIL ADDRESS:

MNORD@gebsmith.com

MICHAEL D. NORD
Member of the Bars of MD, VA,
PA and the District of Columbia

WILMINGTON OFFICE:
SUITE 451
901 MARKET STREET
WILMINGTON, DELAWARE 19801
TELEPHONE: (302) 656-9002
FACSIMILE:   (302) 429-5953

August 6, 2007

**VIA CERTIFIED MAIL – RETURN
RECEIPT REQUESTED AND
VIA FIRST CLASS MAIL**

Hollywood Entertainment Corporation
c/o Movie Gallery, Inc.
Hollywood Management Company
900 West Main Street
Dothan, Alabama 36301
Attn:   Mike Herring

      Re:    Obligations owed by Hollywood Entertainment Corporation and
Hollywood Management Company (collectively, "Lessee") to Wells
Fargo Bank, Northwest, N.A. f/k/a First Security Bank, N.A. as
Trustee for the beneficiary, ORIX Commercial Finance, LLC,
successor-in-interest to ORIX Financial Services, Inc. ("ORIX")
pursuant to a Master Lease Agreement No. 391 dated May 31, 2002
and a Co-Lessee letter to Master Lease Agreement No. 391 dated
May 31, 2002 (collectively, the "Lease Agreement")
Our File No.:   25855

Dear Mr. Herring:

    Please be advised that I represent ORIX in connection with the above-referenced Master
Lease and the various lease documents relating thereto and/or executed in connection therewith
(collectively, the "Lease Documents").

GEBHARDT & SMITH LLP

Mike Herring
August 6, 2007
Page 2

Pursuant to the terms and conditions of the Lease Documents, the term of the Lease expired on June 1, 2007. Prior to that time, the Lessee did not elect to exercise any option to purchase the aircraft, the engines, the propellers, the parts and other equipment defined in the Lease Agreement (collectively, the "Equipment") or exercise any other options under the Lease Agreement prior to the expiration date. Consequently, pursuant to the terms and conditions of the Lease Agreement, the Lessee was required to return all of the Equipment to ORIX free and clear of any and all liens. In addition, the Lessee is obligated to ORIX to comply with the terms and conditions set forth in the Lease Return Provisions Rider to the Lease Agreement, a copy of which Rider is attached hereto. The requirements set forth therein are to be performed by the Lessee at the Lessee's sole cost and expense.

Furthermore, the Lessee is required to pay all fees, charges, insurance premiums, costs and expenses related to the required inspection and component reconciliation to determine the Equipment's compliance with the Lease Documents, as well as paying an amount equal to 125% of the highest periodic rent during the term of the Lease Agreement with respect to the Equipment to the extent that the Lessee fails to turn over the Equipment after the termination date of the Lease Agreement.

Presently Aero Air has provided approximately $400,000.00 for parts, labor and services for the Equipment and the Equipment is presently located at Aero Air's facilities at Portland-Hillsboro Airport in Hillsboro, Oregon. Aero Air has notified the Lessee that it has asserted a lien against the Equipment as a result of the Lessee's failure to pay Aero Air. As required in the Lease Documents, the Lessee is required to return the Equipment to ORIX free and clear of liens and is therefore required to immediately pay all costs and expenses owed to Aero Air so that the Equipment can be delivered to ORIX free and clear of liens.

By way of this letter, ORIX hereby demands the immediate payment of all indebtedness owed by the Lessee to ORIX under the Lease Documents in immediately available funds as well as the turnover of the Equipment free and clear of liens. Please contact the undersigned for an updated pay-off of all indebtedness owed by the Lessee to ORIX under the Lease Documents.

If the Lessee does not immediately pay all indebtedness owed to ORIX under the Lease Documents, in immediately available funds, and return the Equipment free and clear of liens, ORIX shall commence the enforcement of its rights and remedies in connection with this matter.

The acceptance of partial payments, that is, less than the entire amount of the obligations owed by the Lessee to ORIX, shall not constitute a waiver by ORIX of its demand for payment of all indebtedness owed. Nothing contained herein shall be deemed or construed to be a waiver by ORIX of any of its rights and remedies under the Lease Documents or applicable law, nor shall it be deemed or construed to be an agreement by ORIX to forbear from immediately

GEBHARDT & SMITH LLP

Mike Herring
August 6, 2007
Page 3

exercising its rights and remedies in connection with this matter.  ORIX specifically reserves all
of its rights and remedies under the Lease Documents and applicable law.

Very truly yours,

Michael D. Nord

MDN/ss
Enclosure

cc:    Robert J. B. Lenhardt, Director & General Counsel
       John M. Parrott, Portfolio Manager
       S. Page Todd, Executive Vice President,
         Secretary & General Counsel
       Anupe Sathy, Esquire

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**'07 CIV 7712**

| | | |
|---|---|---|
| ORIX COMMERCIAL FINANCE, LLC | : | |
| Plaintiff, | : | |
| v. | : | Case No. |
| HOLLYWOOD ENTERTAINMENT CORPORATION | : | |
| | : | |
| and | : | |
| HOLLYWOOD MANAGEMENT COMPANY | : | |
| Defendants | : | |

x

RECEIVED
AUG 2 9 2007
U.S.D.C. S.D. N.Y.
CASHIERS

## COMPLAINT

Plaintiff, ORIX Commercial Finance, LLC, successor-in-interest to ORIX Financial Services, Inc. ("ORIX"), as for its Complaint against Defendants, Hollywood Entertainment Corporation and Hollywood Management Company (collectively, Lessee") alleges as follows:

### Parties

1.      ORIX is a limited liability company formed under the laws of the State of New York, with its principal place of business in the State of Georgia.

2.      Upon information and belief, Defendant Hollywood Entertainment Corporation is a corporation formed under the laws of the Commonwealth of Virginia, with its principal places of business in the State of Alabama.

3.    Upon information and belief, Defendant Hollywood Management Company is a corporation formed under the laws of the State of Oregon, with its principal place of business in Oregon.

## Jurisdiction and Venue

4.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 as the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs and is between citizens of different states.

5.    Venue is proper in this Court pursuant to 28 U.S.C. §1391 since each of the defendants have consented to be sued in this district.

6.    On or about May 31, 2002, Lessee entered into a lease agreement with Wells Fargo Bank Northwest, NA f/k/a First Security Bank, National Association ("Wells Fargo"), as Trustee under a Trust Agreement dated as of March 28, 2001, between ORIX and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), and ORIX and its successors and assigns.  The lease agreement consisted of a Master Lease Agreement and a Co-Lessee Letter (collectively, the "Lease Documents").  A true and accurate copy of the Lease Documents is attached hereto as Exhibit A.

7.    Pursuant to the terms of the Lease Documents, "interpretation and enforcement of this Lease shall be governed by and in accordance with the laws of the State of New York," and "[a]ny legal action or proceeding with respect to this Lease shall be brought in the courts of New York...."

**Breach of Lease**

8.      Pursuant to the Lease Documents, Lessee leased certain "Equipment" from Lessor, defined as an "aircraft ..., the engines ..., the propellers..., the parts..., and the aircraft documents..., together with all present and future additions, parts, accessories, attachments, substitutions, repairs, improvements and replacements thereof or thereto...."

9.      Also pursuant to the terms and conditions of the Lease Documents:

> Provided that Lessee has not elected to exercise any option to purchase the Equipment in accordance with the provisions of the Schedule, and Lessee has not exercised any other options provided under the Schedule, Lessee agrees that Lessee shall return all, and not less than all, Equipment covered by the Schedule, on or before the Expiration Date of the Term ... with respect thereto.... In such event, Lessee shall, on or before the Return Date, return all, and not less than all, Equipment covered by the Schedule to ORIX free and clear of any and all Liens (other than those arising by, through or under Lessor or ORIX)....

10.     The term of the Lease Expired on June 1, 2007.

11.     Neither prior to nor on June 1, 2007, the expiration date set forth under the Lease Documents, did Lessee elect to exercise any option to purchase the Equipment, or exercise any other options under the Lease Documents.  As such, Lessee was required to return all of the Equipment to ORIX free and clear of any and all liens and, *inter alia*, was obligated to ORIX to comply with the terms and conditions set forth in the Lease Return Provisions Rider in the Lease Documents.

12.     Lessee failed to return the Equipment free and clear of liens.

13.     On or about July 26, 2007, Aero Air provided notice to Defendants of Aero Air's assertion of a lien against the Equipment.  A true and accurate copy of the

July 26, 2007 letter, as it was obtained by ORIX, is attached hereto as Exhibit B. The Equipment was at that time, and remains at Aero Air's facilities at Portland-Hillsboro Airport in Hillsboro, Oregon.

14.    According to Aero Air, it provided labor and services with respect to the Equipment in the amount of Three Hundred Ninety Six Thousand Nine Hundred Fifty One Dollars and Fifty One Cents ($396,951.51), payment for such labor and services having not been rendered. Aero Air further advised that the amount due and owing would continue to accrue interest at a rate of 1.5% per month, that from that day forth a storage fee of Two Hundred Fifty Dollars ($250) per day would be charged, and that insurance coverage for the Equipment would lapse on July 31, 2007.

15.    Lessee further failed to undertake the inspection and component compliance reconciliation required by the Lease Documents despite being required to pay all fees, charges, insurance premiums, costs and expenses related to inspection and component reconciliation to determine the Equipment's compliance with the Lease Documents.

16.    In addition, Lessee is required to pay an amount equal to 125% of the highest periodic rent during the term of the lease with respect to Equipment, to the extent Lessee fails to turn over the Equipment after termination of the lease.

17.    On or about August 6, 2007, ORIX demanded from Lessee immediate payment of all indebtedness owed by Lessee to ORIX under the Lease Documents and turnover of the Equipment free and clear of liens. A true and copy of the August 6, 2007 letter is attached hereto as Exhibit C. Despite demand, Lessee has failed and refused to

pay those amounts due and owing under the Lease Documents to ORIX and to turnover the Equipment to ORIX free and clear of liens.

18.    As a result of the foregoing, Lessee has materially breached the Lease Documents thereby causing damages to ORIX.

19.    Lessee agreed, under the terms of the Lease Documents, to "indemnify, save, protect, defend and keep harmless … ORIX, and [its] agents, directors, employees, successors and assigns, from and against any and all … expenses, including legal fees … relating to any default by Lessee or Event of Default."

WHEREFORE, Plaintiff ORIX Commercial Finance, Inc., successor-in-interest to ORIX Financial Services, Inc., respectfully requests that this Court enter judgment in its favor and against Defendants Hollywood Entertainment Corporation and Hollywood Management Company, jointly and severally, in the amount of damages sustained by Plaintiff, as well as for incidental and consequential damages suffered by Plaintiff, interest, costs, attorneys' fees, and any other relief this Court deems just and proper.

Dated: New York, New York
         August 29, 2007

KASOWITZ, BENSON, TORRES
& Friedman LLP

By _____
        David J. Mark (DM-9548)
        Kristina R. Juntunen (KJ-2871)
        1633 Broadway
        New York, New York 10019
        Tel:  (212) 506-1700
        Fax:  (212) 506-1800

Michael D. Nord
Patrick J. Madigan
Gebhardt & Smith LLP
One South Street
Suite 2200
Baltimore, Maryland 21202
(410) 752-5830
(410) 385-5119 (fax)

*Attorneys for Plaintiff*

# EXHIBIT

# A

Master Lease Agreement Number 391

## MASTER LEASE AGREEMENT

This Master Lease Agreement (as modified or amended from time to time, "Master Lease Agreement"), is made and entered into as of the 31st day of May, 2002 by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National Association ("Wells Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns, having its principal place of business at 79 South Main Street, Salt Lake City, UT 84111 (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation, having its principal place of business at 600 TownPark Lane, 3rd Floor, Kennesaw, Georgia 30144, it successors and/or assigns ("ORIX"), and Hollywood Entertainment Corporation, an Oregon corporation, and Hollywood Management Company, an Oregon corporation, both having their principal place of business at 9275 SW Peyton Lane, Wilsonville, Oregon 97070 (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THIS MASTER LEASE AGREEMENT, THE PARTIES AGREE AS FOLLOWS:

### WITNESSETH:

**Section 1. Lease of Equipment.** Lessor hereby leases to Lessee and Lessee hereby leases from Lessor, the personal property described in each Master Lease Schedule (individually a "Schedule" and collectively the "Schedules") executed from time to time in accordance with this Master Lease Agreement, including, without limitation, the aircraft ("Aircraft"), the engines ("Engines"), the propellers ("Propellers"), the parts ("Parts"), and the aircraft documents ("Aircraft Documents"), together with all present and future additions, parts, accessories, attachments, substitutions, repairs, improvements and replacements thereof or thereto (collectively, the "Equipment"; a unit or part thereof being sometimes hereinafter referred as an "Item"), subject to and upon terms set forth herein. The Equipment shall be more particularly described in each Schedule now or hereafter executed by Lessor, ORIX and Lessee. Each Schedule shall constitute a separate and enforceable lease incorporating all the terms of this Master Lease Agreement as if such terms were fully set forth in full in such Schedule. In the event that any term of any Schedule conflicts with or is inconsistent with any term of this Master Lease Agreement, the terms of the Schedule shall control. This Master Lease Agreement and each Schedule now or hereafter executed by the parties shall constitute one lease ("Lease").

**Section 2. Term.** The effective date of this Lease shall commence with respect to the Equipment described in any particular Schedule upon the Delivery Date (as defined in the Delivery and Acceptance Certificate) of the Equipment in connection with such Schedule (referred to as the "Effective Date") and, unless sooner terminated (as hereinafter provided), shall expire on the Expiration Date specified in such Schedule ("Term") provided, however, that obligations due to be performed by the Lessee during the Term shall continue until they have been performed in full. If any Term shall be extended or this Lease is renewed pursuant to an extension or renewal option, the word "Term" shall include all such extensions and renewals, and all provisions of this Lease shall apply during all extension and renewal periods, except as may be specifically provided otherwise in any Schedule or other written agreement applicable thereto. Each Schedule shall be renewable in accordance with the terms thereof.

**Section 3. Rent, Interim Rent and Payment.** Lessee shall pay as rent to Lessor, for use of the Equipment during the Term, rental payments as set forth in each Schedule ("Rent"), including a pro-rata portion of the Rent ("Interim Rent") for any interim period from the Delivery Date through the day immediately preceding the "Rent Commencement Date" as defined in each Schedule (unless otherwise stated in each Schedule, the Rent Commencement Date shall be the first day of the first calendar month immediately following the Execution Date of each Schedule). Interim Rent shall be due and payable on the Execution Date. The first payment of Rent and all subsequent payments thereof shall be due and payable as specified in such Schedule. Any payment due on a day which is not a business day shall be made on the following business day. Rent payments shall be due whether or not Lessee has received any notice that such payments are due. If any Rent or other amount payable by Lessee is not paid within ten (10) days after the day on which it becomes due and payable, Lessee will pay on demand, as a late fee, an amount equal to five percent (5%) of such unpaid Rent or other amount but only to the extent permitted by applicable law. Rent, Interim Rent and all other amounts payable to Lessor under any provision of this Lease shall be paid to Lessor at ORIX's office at Structured Finance Group, P.O. Box 1679, Pittsburgh, PA 15230-1679.

**Section 4. Disclaimer – No Warranties by Lessor or ORIX.** LESSOR AND ORIX, NOT BEING THE MANUFACTURER OF THE EQUIPMENT, MANUFACTURER'S AGENT, NOR SELLER OF THE EQUIPMENT, MAKE NO REPRESENTATION OR WARRANTY OF ANY KIND, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING, WITHOUT LIMITATION, THE DESIGN OR CONDITION OF THE EQUIPMENT OR ITS MERCHANTABILITY, SUITABILITY, QUALITY OR FITNESS FOR A PARTICULAR PURPOSE, AND HEREBY DISCLAIMS ANY SUCH WARRANTY. Lessee specifically waives all rights to make a claim against Lessor or ORIX for breach of any warranty whatsoever. Lessee leases the Equipment "AS IS." In no event shall Lessor or ORIX have any liability for, nor shall Lessee have any remedy against Lessor or ORIX for, any liability, claim, loss, damage or expense caused directly or indirectly by the Equipment or any deficiency or defect thereof or the operation, maintenance or repair thereof or any consequential damages as that term is used in section 2-719(3) of the Uniform Commercial Code of the State of New York (as amended or modified from time to time, the "UCC").

**Section 5. Non-cancelable Lease.** This Lease may not be canceled or terminated except as expressly provided herein. This Lease is a net lease and Lessee shall not be entitled to any abatement or reduction of, or set-off against, any Rent by reason of any (i) past, present or future claim against Lessor or ORIX or any successor or assignee thereof or any supplier of any Item of Equipment or any other person; (ii) defect in or damage to, or loss, prohibition, restriction on use, damage or destruction of, any Item of Equipment (except as expressly provided herein) from whatever cause (whether or not the same would, but for this provision, result in the termination of the Lease with respect to any item of Equipment by operation of law); (iii) any lack of invalidity of title or any other defect in title, airworthiness, merchantability, fitness for any purpose, condition, design or operation of any kind or nature of any Item of Equipment for any particular use, or for registration or documentation under the laws of any relevant jurisdiction; or (iv) any other causes whatsoever, whether similar or dissimilar to the foregoing, it being the intention of the parties that all Rent shall continue to be payable in all events in the manner and at the times specified in this Lease and that Lessee's obligation to pay Rent shall be absolute and unconditional unless the obligation to pay shall be terminated pursuant to the express provisions of this Lease. If the Equipment is unsatisfactory for any reason, Lessee shall make any claim solely against the manufacturer or the vendor thereof and shall, nevertheless, pay Lessor all Rent payable hereunder.

Master Lease Agreement Number 391

<u>Section 6. Delivery and Acceptance.</u> The Equipment shall be delivered and based at the location specified in each Schedule. Lessor and ORIX hereby appoint Lessee as Lessor and ORIX's agent for the sole and limited purpose of accepting delivery of the Equipment from each vendor thereof. Lessee shall pay any and all delivery and installation charges. Neither Lessor nor ORIX shall be liable to Lessee for any delay in, or failure of, delivery of the Equipment. Upon delivery of the Equipment to each location specified in each Schedule (herein, the "Base"), Lessee shall accept the Equipment for lease hereunder. Upon such acceptance, Lessee shall execute and deliver to ORIX a Delivery and Acceptance Certificate, which Agreement shall constitute conclusive evidence that the Equipment has been delivered and accepted by Lessee for all purposes under this Lease. ORIX will not disburse any funds until ORIX receives such Delivery and Acceptance Certificate. By Lessee's execution of the Delivery and Acceptance Agreement and any Schedule, Lessee warrants and agrees that the Equipment conforms to the specifications and requirements of Lessee and that, as between Lessor, ORIX and Lessee, the Equipment was delivered in good repair and that Lessee has unconditionally accepted it hereunder "AS IS" and "WITH ALL FAULTS" as of the Delivery Date.

<u>Section 7. Lessor's Title and Grant of Security Interest.</u> The Equipment is and shall be the sole property of Lessor, and title to the Equipment shall at all times remain with Lessor. Lessee shall have no right, title or interest therein, except as lessee under this Lease. Lessee will at all times protect and defend, at its own cost and expense, the title of Lessor from and against all claims, liens and legal processes of creditors of Lessee. Lessee shall keep each Item of Equipment free and clear from all claims, liens, pledges, encumbrances, rights and processes and shall not create, incur, assume or suffer to exist any thereof in, on, of or to any Item of Equipment (collectively "Liens"), other than those arising by, through or under Lessor or ORIX. The Equipment is and shall at all times be and remain personal property and shall not become a fixture, and Lessee agrees not to take any actions which are likely to cause any Item of Equipment to become a fixture. Lessee shall obtain and record such instruments and take such steps as may be necessary to prevent any party from acquiring any rights in the Equipment by reason of the Equipment being claimed or deemed to be real property. Notwithstanding the express intent of the parties, should a court of competent jurisdiction declare that this Lease is not a (true) lease, but rather a lease intended as security or a security agreement, then Lessee shall be deemed, as of the date of this Lease, to have granted to Lessor a first priority continuing lien and security interest in and to the Equipment and the proceeds thereof to secure any obligation of Lessee under this Master Lease Agreement and each Schedule.

<u>Section 8. Changes in Lessee's Name, Jurisdiction of Organization, or Location.</u> Except upon thirty (30) days prior written notice to ORIX and delivery to ORIX of all additional executed UCC-1 financing statements and other documents reasonably requested by ORIX to maintain the validity, perfection and priority of the security interests provided for herein, Lessee shall not change its name, jurisdiction of organization, location of its chief executive office or sole place of business, or principal residence from that referred to in the Lease documents.

<u>Section 9. Citizenship, Possession, Use and Changes in Location of Equipment, and Right of Inspection and Identification of Equipment.</u>

9.1. Lessee is, and will remain during the Term, a citizen of the United States as defined in 49 U.S.C. Section 40102(a)(15).

9.2. Lessee agrees that it shall be responsible for the selection, use of, and results obtained from, the Equipment and any other associated equipment or services. Lessee agrees that the Equipment will be operated by competent, qualified personnel in connection with Lessee's business for the purpose for which the Equipment was designed and in accordance with applicable operating instructions, laws and government regulations, including, without limitation, all recommendations, operating instructions, rules and regulations of the FAA. Lessee shall ensure that the pilots, crew and engineers employed in connection with the operation and maintenance of the Equipment have the qualifications and hold the licenses required by the FAA, or any other applicable authority or by any applicable law, rule or regulation and in accordance with applicable insurance requirements. Lessee shall use reasonable precautions to prevent loss or damage to the Equipment from fire and other hazards and shall comply with all provisions of the insurance required to be maintained hereunder and the terms of any manufacturer's warranty. Lessee shall procure, or cause to be procured, and maintain, or cause to be maintained, in effect all orders, licenses, certificates, permits, approvals and consents required by federal, state or local laws or by any governmental body, agency or authority (including, without limitation, the FAA) in connection with the delivery, installation, use and operation of the Equipment. Lessee shall do, or cause to be done, all acts and things (including, without limitation, any filing or registration with the FAA or any governmental authority as may be required by ORIX) (a) following any modification of the Equipment or the replacement of any Item of Equipment so as to assure that the rights of Lessor as owner of the Equipment and under this Lease apply with the same effect as before or (b) to establish, maintain, preserve, perfect and protect the rights of Lessor and ORIX under this Lease and the interests of Lessor as owner of the Equipment. Notwithstanding anything herein to the contrary, Aero Air, or some other maintenance/service provider mutually agreed upon by ORIX and Lessee, may use, operate and maintain the Equipment pursuant to a written service agreement between Aero Air, or such other maintenance/service provider as mutually agreed upon by ORIX and Lessee; provided however, Lessee shall continue to be primarily liable for the obligations hereunder and shall not be released therefrom.

9.3. The Equipment shall at all times be based at the Base specified in the Schedule with respect to such Item unless ORIX has given prior consent, in writing, to a change in location, such consent not to be unreasonably withheld. In the event that ORIX consents in writing to a change in the location of any Item of Equipment, Lessee agrees to provide, at its own cost and expense, ORIX with duly executed financing statements and other agreements and instruments (all in a form and substance satisfactory to ORIX) necessary or, in the opinion of ORIX , desirable to protect Lessor's interest in such Equipment. Except as provided in the last sentence of Section 9.2 of this Agreement, Lessee shall at all times keep each Item of Equipment in its possession and control. Lessee shall not at any time permit the Equipment to be based outside of the United States. Lessee shall further not (a) use or operate the Equipment in any geographic area or territory for or with respect to which Lessee has not obtained and/or does not exist, in full force and effect, the insurance coverages required under and pursuant to Section 12 hereof; (b) use or operate the Equipment at any location that is prohibited or not permitted under any applicable law, rule or regulation, or (c) use or operate the Equipment in any other manner not covered by the insurance maintained pursuant to Section 12 or in any area excluded from coverage by such insurance or in any manner which would prejudice the interests of Lessor or ORIX in the Equipment or such insurance.

9.4. The Equipment shall at all times be used for commercial or business purposes not prohibited by the FAA or applicable law, rule or regulation. Lessee shall not use the Equipment for the carriage of any goods, materials, livestock or items of cargo which could reasonably be expected to cause damage to the Equipment or which would not be adequately covered by the insurance described in Section 12 or any item or substance whose possession or carriage is prohibited by applicable law, rule or regulation.

9.5. Lessor and ORIX shall have the right, but not the obligation, upon reasonable notice, and at all reasonable times to enter upon the premises where the Equipment is located and used and inspect the Equipment (and all records relating thereto) and Lessee shall make the Equipment (and such records) available

2

Master Lease Agreement Number 391

to Lessor and ORIX for that purpose; provided, however, Lessor and ORIX shall use reasonable efforts not to interfere with the normal conduct of the business and operations of Lessee in connection with such inspection. Lessee shall (i) promptly furnish to ORIX all information ORIX may from time to time reasonably request regarding the Aircraft, each Engine, any other engine installed on the Aircraft, each Propeller and any Part, and the use, location and condition of the Aircraft, including, without limitation, the hours remaining in the Aircraft and any Engine or Propeller until the next scheduled check, inspection, overhaul or shop visit, as the case may be, and (ii) provide ORIX at least thirty (30) days advance notice of each heavy maintenance visit for the Aircraft. Lessee further agrees to carry, at all times, in the Aircraft, a true fully executed copy of this Master Lease Agreement and the Schedule.

9.6. The Equipment is not and will not be registered under the laws of any foreign country. Lessee shall maintain the registration of the Aircraft, the Engines and the Propellers with the Federal Aviation Administration of the United States and any successor thereof ("FAA") in the name of Lessor and will not do or suffer to be done anything which might adversely affect that registration.

Section 10. Maintenance and Service; Improvements. Lessee shall, at Lessee's expense, at all times maintain, service and repair the Equipment as would a prudent owner of such Item of Equipment, and in any event so as to keep the Equipment in good operating condition, ordinary wear and tear excepted, in compliance with all applicable laws, rules, regulations, and manufacturer's recommended basic warranty, extended warranty and/or maintenance program requirements, and as otherwise may be required to enforce warranty claims against each vendor and manufacturer of the Equipment. In addition, Lessee shall, at its expense, comply with all maintenance requirements set forth by ORIX in the Lease Return Provisions Rider, if applicable. Without limitation of the foregoing, Lessee shall maintain, inspect, service and repair, overhaul and test the Equipment in accordance with the FAA approved maintenance program, manufacturer's approved maintenance program, FAA airworthiness directives, and the manufacturer's alert bulletins and urgently recommended service bulletins and procedures, and perform all duties and tasks which would be required to maintain the Equipment, including the Engines and Propellers, in full compliance with the manufacturer's specifications (a) so as to keep the Equipment in good operating conditions as when delivered to the Lessee hereunder, ordinary wear and tear excepted, and (b) so as to keep the Equipment in such operating condition as may be necessary to enable the airworthiness certification of such Equipment to be maintained in good standing at all times under the Federal Aviation Act. Lessee shall maintain all records, logs and other materials required by the FAA to be maintained in respect of the Equipment, all of which shall constitute Aircraft Documents for purposes hereof. Any alterations or modification with respect to any Item of Equipment that may be required at any time during the Term to comply with any applicable law or governmental or other rule or regulation shall be made by Lessee, at its expense, and shall thereupon become the property of Lessor and subject to this Lease. Unless required by the terms of this Lease or unless ORIX expressly consents in writing, Lessee shall not affix or install any accessory, equipment, or device on, or modify, any Item of Equipment if such addition or modification will impair the original function or use thereof or cannot be readily removed without causing damage to such Item of Equipment.. Lessee shall maintain in good standing a certificate of airworthiness (in the appropriate category for the nature of the operations of the Aircraft) for the Aircraft issued by the FAA.

Section 11. Quiet Enjoyment. Provided that no Event of Default, or event which, with the giving of notice, the passage of time, or both, would constitute an Event of Default, shall have occurred and be continuing, neither Lessor nor ORIX shall interfere with Lessee's quiet enjoyment and use of the Equipment during the Term therefor.

Section 12. Insurance. Lessee will, at its sole expense and at all times during the Term and until the Equipment is returned to and received by ORIX, obtain and carry, or cause to be obtained and carried, the following types and amounts of insurance: (a) "All Risk" type hull insurance on the Equipment, both In-Flight and Not In-Flight, including ingestion and foreign object damage, in amounts not less than the greater of (i) its full insurable value including replacement costs or (ii) the stipulated loss value of the Equipment specified in the Stipulated Loss Value Rider ("Stipulated Loss Value"), with a deductible not to exceed Five Million and No/100 Dollars ($5,000,000.00) per occurrence and without co-insurance, and (b) comprehensive aircraft liability insurance (including passengers, passengers' baggage, cargo and mail, crew, public liability, and property damage) with limits no less than U.S. $100,000,000.00 combined single limit per occurrence. As to other risks, Lessee shall maintain insurance in such amounts and against such risks as is customarily required for this type of Equipment and shall be issued by either the insurers who insure the Equipment on the Effective Date or one or more other domestic primary insurer(s) having a general policy rating of A or better and a financial class of VI or better by A.M. Best Company, Inc. (or if a rating of A.M. Best Company Inc. is no longer available, a similar rating from a similar or successor service); provided, that such insurance shall not be less, in terms of insurers, amounts, coverages or limitations, than the insurance being maintained by Lessee on the date of this Master Lease Agreement. All policies of insurance shall provide for at least thirty (30) days prior written notice to ORIX prior to any modification or cancellation or lapse thereof; shall name Lessor as loss payee and mortgagee, in the case of property or casualty insurance, and additional insured, in the case of liability insurance, and shall be payable to Lessee and Lessor as their interests may appear; shall waive any claim for premium against Lessor; shall provide that no breach of warranty or representation or act or omission of Lessee shall terminate, limit or affect the insurers' liability to Lessor; shall provide that the geographic limits, if any, contained in such policy will include at a minimum all territories over which Lessee will operate the Equipment; and shall be primary without the right of contribution from any other insurance which is carried by Lessor or ORIX with respect to their respective interest in the Equipment. Certificates of insurance or policies evidencing the insurance required hereunder (along with satisfactory proof of the payment of the premiums therefor) shall be delivered to ORIX. Lessee provide written notice to ORIX and to insurers within ten (10) days of any loss or damage to the Equipment, and shall promptly file proofs of loss with insurers. Lessee hereby assigns to Lessor, as additional security for the indebtedness, all sums which may become payable under such insurance.

Section 13. Casualty and Loss. Until the Equipment is returned to and received by ORIX, Lessee assumes and shall solely responsible for the entire risk of any Item of Equipment lost, stolen, destroyed, damaged, condemned or seized ("Casualty Loss"). No Casualty Loss shall relieve Lessee from its obligations to pay Rent except as provided in clause (ii) below. When any Casualty Loss occurs, Lessee shall immediately notify ORIX and, at the option of ORIX, shall promptly (i) place such Equipment in good repair and working order; or (ii) pay ORIX an amount equal to the Stipulated Loss Value of such Equipment and all other amounts (excluding Rent) payable by Lessee hereunder from the date of the Casualty Loss through the date of payment of such amount, whereupon Lessor and ORIX shall transfer to Lessee, without recourse or warranty (express or implied), all of ORIX and Lessor's interest, if any, in and to such Equipment on an "AS IS, WHERE IS" basis. The proceeds of any insurance payable with respect to the Equipment shall be applied, at the option of ORIX, either towards (i) repair of the Equipment or (ii) payment of any of Lessee's obligations hereunder. In the event Lessee fails to provide ORIX with evidence of the insurance coverage required by this Master Lease Agreement, ORIX may purchase (but is not required to purchase) insurance at Lessee's expense to protect ORIX and Lessor's interest in the Equipment. Lessee may later cancel any insurance purchased by ORIX, but only after providing ORIX with evidence that Lessee has obtained insurance as required by this Master Lease Agreement. If ORIX purchases insurance for the Equipment, Lessee will be responsible for the costs of that insurance, including interest and other charges imposed by ORIX in connection with the placement of the insurance, until the

3

Master Lease Agreement Number 391

effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to the amounts owing by Lessee to ORIX and Lessor hereunder. The costs of the insurance may be more than the cost of insurance Lessee is able to obtain on its own.

Section 14. Taxes. See the Property, Sales and Use Tax Payment Rider, which shall control.

Section 15. General Indemnity. Lessee hereby agrees to indemnify, save, protect, defend and keep harmless Lessor and ORIX, and their agents, directors, employees, successors and assigns, from and against any and all losses, damages (including indirect, special or consequential damages), harm, expenses, including legal fees, penalties, injuries, claims, actions and suits, of whatsoever kind and nature, in contract, tort or otherwise, including Lessor's or ORIX's strict liability in tort, in any way arising out of, relating to or in connection with the selection, modification, purchase, acceptance, rejection, ownership, delivery, lease, possession, maintenance, use, condition (including latent or other defects, whether or not discoverable by Lessor, ORIX or Lessee, and any claim for patent, trademark or copyrights infringement), return of, or operation of any Item of Equipment prior to its Return Date or relating to any default by Lessee or Event of Default. Lessee agrees that upon written notice by ORIX of the assertion of any claim, action, damage, obligation, liability or lien, Lessee shall assume full responsibility for the defense thereof. The provisions of this Section 15 with regard to matters arising during a Lease shall survive the expiration or termination of such Lease.

Section 16. Lessor Expenses. Lessee shall pay ORIX on demand all charges, costs, expenses and attorney's fees incurred by Lessor or ORIX (including, without limitation, the premium for the aircraft title insurance policy required by ORIX and FAA filing and recording fees): (i) in defending and protecting ORIX and Lessor's rights and interests in this Lease and the Equipment; (ii) in the amendment or enforcement of this Lease or the collection of any Rent hereunder; (iii) in any lawsuit or other legal proceeding in any way connected with this Lease, including, but not limited to, any contract or tort or other actions, any arbitration or other alternative dispute resolution proceeding, all appeals and judgment enforcement actions and any bankruptcy proceeding (including, but not limited to, any relief from stay and/or adequate protection motions, cash collateral disputes, assumption/rejection motions and disputes or objections to any proposed disclosure statement or reorganization plan). Lessee acknowledges and agrees that the preceding sentence shall survive and not be merged with any judgment in connection with any exercise of any remedy by Lessor or ORIX provided hereunder.

Section 17. Assignment. Lessee shall not, without the prior written consent of ORIX, (i) assign, transfer, pledge or otherwise dispose of this Lease, any Schedule, any Item of Equipment or any interest therein; or (ii) subject to the terms of Section 9.2 of this Agreement, sublease or lend any Equipment or permit it to be used by anyone other than Lessee and its employees. Any sale, transfer, assignment, sublease, conveyance or pledge, whether by operation of law or otherwise, without the prior written consent of ORIX, shall be void. Lessor or ORIX may sell, assign or otherwise transfer all or any part of its rights, title and interest in and to the Equipment and/or this Lease or in any Schedule executed in connection herewith, to a third-party assignee, subject to the terms and conditions of this Lease including, but not limited to, the right to the quiet enjoyment by Lessee as set forth in Section 11 herein. Any such assignee may assume all of the rights and obligations of Lessor or ORIX in connection with the Equipment or any Schedules sold, assigned or otherwise transferred, in which case Lessor or ORIX shall be relieved therefrom. To the extent of any such assumption of obligations, all references to Lessor or ORIX herein shall thereafter mean such assignee. Lessor or ORIX may also pledge, mortgage or grant a security interest in the Equipment and assign this Lease as collateral. Each such pledge, mortgagee, lien holder or assignee shall have any and all rights as may be assigned by Lessor or ORIX but none of the obligations of Lessor or ORIX hereunder. Any pledge, mortgage or grant of security interest in the Equipment or collateral assignment of this Lease shall be subject to the terms and conditions hereof including, but not limited to, the right to the quiet enjoyment of the Equipment by Lessee as set forth in Section 11 herein. If Lessor or ORIX grant a security interest in all or any part of any Schedule, any Equipment covered thereby and/or any sums payable thereunder, only the original of the Schedule held by Lessor or ORIX shall be effective to transfer ORIX or Lessor's rights therein. Lessee shall not be relieved of any of its obligations hereunder by reason of any such sale, assignment, transfer, pledge, mortgage, grant of security interest or collateral assignment referred to in this section, all of which obligations shall remain absolute and unconditional, including, but not limited to, Lessee's obligations to pay Rent as set forth in Section 3 herein. Lessee agrees that it will not assert against any purchaser, pledgee, mortgagee, lien holder or assignee (collectively, "Assignee") any defense, counterclaim or offset that Lessee may have against Lessor or ORIX, and Lessee acknowledges that any such assignment or other transfer by Lessor or ORIX, or any such pledge, mortgage, grant of security interest or collateral assignment by Lessor or ORIX, shall not change Lessee's duties or obligations under this Lease nor increase the burdens or risks imposed on Lessee. Upon the written request of Lessor or ORIX, Lessee shall acknowledge all such obligations to the Assignee, which acknowledgement shall be in such form and substance as Lessor, ORIX or any such Assignee may require, consistent with their normal business practices.

Section 18. Representations and Warranties of Lessee. Lessee hereby represents and warrants to ORIX, as of the date of this Lease, that: (I) Lessee is duly organized, validly existing and in good standing under the laws of the state of its incorporation or organization, is qualified to do business where necessary to carry on its business and operations as now conducted and as presently contemplated, and in each other state where the failure to be so qualified or licensed might have a material adverse effect on Lessee's ability to perform its obligations under the Lease, and has the power and authority to own, lease and operate its properties; (II) the Lease has been duly authorized, executed and delivered by Lessee and constitutes the valid, legal and binding obligation of Lessee, enforceable in accordance with its terms except as limited by bankruptcy, insolvency or other laws of general application relating to or affecting the enforcement of creditors' or lessors' rights generally and general principles of equity. No consent, approval, order or authorization of, or registration, declaration or filing with, any governmental authority or other party is required in connection with the execution and delivery of the Lease by Lessee; (III) the execution and delivery by Lessee of the Lease does not and will not violate any requirement of law applicable to Lessee, violate any provision of, or result in the breach or the acceleration of, or entitle any other party to accelerate (whether after the giving of notice or lapse of time or both), any contractual obligation of Lessee, result in the creation or imposition of any Lien upon the Equipment (except Liens in favor of Lessor or ORIX pursuant to the Lease), conflict with any of the terms, conditions or provisions of any order, judgment, decree or ruling of any court, arbitrator or governmental authority applicable to Lessee, or violate any provision of Lessee's organizational documents; (IV) there is no existing Event of Default under this Lease or any existing default or event of default in connection with any indenture, bank loan or credit agreement to which Lessee is a party; (V) there are no suits or proceedings pending or threatened in any court or by any governmental agency against or affecting Lessee, which, if adversely determined, would have a material adverse effect on the ability of Lessee to fulfill its obligations under this Lease or its financial condition or prospects; and (vi) all financial statements, including but not limited to, balance sheets, income statements and statements of cash flow, of Lessee provided by Lessee to ORIX (a) are consistent with the books and records of Lessee which have been maintained in accordance with good business practice; (b) have been prepared in conformity with generally accepted accounting principles; (c) fairly present the financial condition of Lessee as at their respective dates; and (d) do not omit any information which is necessary to make the financial statements not materially misleading. Since the date of the most recent of financial statements provided to ORIX by Lessee, there have been no changes in the

4

Master Lease Agreement Number 391

assets, liabilities, financial condition, or business of the Lessee other than changes in the ordinary course of business, the effect of which has not, in the aggregate, been materially adverse.

Section 19. Default. Lessee shall be in default under the Lease upon the occurrence of any of the following events (each, an "Event of Default"): (i) Lessee fails to pay Rent or any other amount due and payable pursuant to the terms and conditions of this Lease, including but not limited to taxes, governmental assessments, Impositions and recording expenses, within ten (10) calendar days after the same shall become due and payable; (ii) Lessee changes its name, or changes its jurisdiction of organization or the location of its chief executive office or sole place of business or principal residence, except as provided for in Section 8 hereof; (iii) Lessee fails to perform any other provision under or in connection with this Lease or violates any of the representations, warranties, covenants or agreements under or in connection with this Lease within thirty (30) days after receipt of written notice from ORIX of such failure of violation, provided however, that Lessee's failure to satisfy the terms and conditions under Section 12 of this Agreement shall be an immediate Event of Default; (iv) Any representation made or financial information delivered or furnished by Lessee under or in connection with this Lease shall prove to have been inaccurate in any material respect when made; (v) Lessee (a) shall file a voluntary petition in bankruptcy or answer seeking liquidation, administration, reorganization, arrangement, readjustment of its debts, or for any other relief under the Bankruptcy Code, or under any other act or law pertaining to insolvency or debtor relief, whether state, federal or foreign, now or hereafter existing; (b) shall enter in any agreement indicating its consent to, approval of, or acquiescence in, any such petition or proceeding; (c) shall apply for or permit the appointment by consent or acquiescence of a receiver, custodian, administrator or trustee for all or a substantial part of its property; (d) shall make an assignment for the benefit of creditors; (e) shall be unable or shall fail to pay its debts generally as such debts become due; or (f) shall admit, in writing, its inability to pay its debts generally as such debts become due; (vi) There shall have been filed against Lessee an involuntary petition in bankruptcy or seeking liquidation, administration, reorganization, arrangement, readjustment of its debts, or for any other relief under the Bankruptcy Code, or under any other act or law pertaining to insolvency or debtor relief, whether state, federal or foreign, now or hereafter existing; or Lessee shall permit the involuntary appointment of a receiver, custodian, administrator or trustee for all or a substantial part of its property; or Lessee shall suffer or permit the issuance of a warrant of attachment, diligence, execution or similar process against all or any substantial part of its property; unless, in each case, such petition, appointment or process is fully bonded against, vacated or dismissed within forty-five (45) days from its effective date, but not later than ten (10) days prior to any proposed disposition of any assets pursuant to any such proceeding; (vii) Lessee shall fail (and such failure shall not have been cured or waived) to perform or observe any term, provision or condition of, or any other default or event of default shall occur under Lessee's senior credit facility, by and among Lessee and UBS Warburg as Agent, and other lenders who may be a party thereto from time to time, if the effect of such failure or default is the acceleration of the indebtedness associated therewith, and such indebtedness becomes immediately due and payable prior to the stated maturity thereof; (viii) Any judgment shall be rendered against Lessee which shall remain unpaid or unstayed for a period of sixty (60) days, if such judgment would materially affect Lessee's ability to perform under this Lease; (ix) Subsequent to the date hereof, any person (as defined in Section 14(d)(2) of the Securities Exchange Act of 1934, as amended and in effect on the date hereof (the "Exchange Act"), exclusive of any person which is on the date hereof a holder of common stock of Lessee (an "Excluded Person") or related persons (exclusive of any Excluded Person), constituting a group (as such term is used in Rule 13d-5 under the Exchange Act as in effect on the date hereof) obtains the beneficial ownership and control, directly or indirectly, of the majority of the outstanding voting securities or other interests entitled (without regard to the occurrence of any contingency) to elect or appoint members of the board of directors or other managing body of Lessee ("Change in Control"); or there is any merger, consolidation, dissolution, liquidation, winding up or sale or other transfer of all or substantially all of the assets of Lessee pursuant to which there is a Change of Control or cessation of Lessee or its business; or (x) The occurrence of any material adverse change (financial or business or otherwise) with respect to Lessee since the Effective Date, if the effect of such material adverse change is to prevent Lessee from performing its obligations under this Lease or satisfying or complying with any of the terms and conditions of this Agreement. Lessee shall immediately provide ORIX with written notice of the occurrence of any Event of Default or event that, with the lapse of time or giving of notice or both, could become an Event of Default.

Section 20. Remedies.

20.1. Upon the occurrence of an Event of Default, Lessor and ORIX shall have the rights and remedies provided by applicable law and by this Lease. Notwithstanding that this Agreement is a lease and title to the Equipment is at all times in Lessor, Lessor and ORIX may at their option, choose those rights and remedies of a secured party under the Uniform Commercial Code. In addition, Lessor and ORIX, at their option, shall have the right, in their sole discretion, to exercise any one or more of the following remedies: (i) To proceed by appropriate court action to enforce performance by Lessee of its obligations hereunder or to recover damages for breach thereof; (ii) To take possession of any or all Items of Equipment, wherever located, without demand, notice, court order or other process of law, and thereafter hold, sell, operate or lease such Item free of claims of Lessee, except as set forth below; (iii) By notice to Lessee, to terminate or cancel this Lease and, at ORIX and Lessor's option, without prejudice to any of their other rights under this Lease or applicable law, declare any and all Rent and any other amounts then due and payable pursuant to the Lease, to be immediately due and payable (which Lessee shall promptly pay) without the necessity of any notice or declaration and without presentment, presentation, demand of payment or protest, which are hereby expressly waived; (iv) The obligation of ORIX, if any, to give additional (or to continue) financial accommodations of any kind to the Lessee shall immediately terminate; (v) Demand that Lessee return any or all Equipment to ORIX in accordance with Section 27 herein; (vi) To demand immediate payment of the Stipulated Loss Value (as identified in the Schedule) of the Equipment as liquidated damages for the remaining term (whereupon Lessee shall promptly pay the same; and (vii) Pursue or exercise any other right or remedy to recover damages or enforce the terms of the Leases that is available to Lessor or ORIX at law or in equity.

20.2. Lessor, ORIX and Lessee agree that an amount equal to the Stipulated loss Value of the Equipment represents a reasonable return for the use of the Equipment and for the depreciation thereof, and shall be the basis for liquidated damages for the remaining term for which Lessee shall be liable to Lessor and ORIX upon the occurrence of an Event of Default. Any amounts realized by Lessor and ORIX on account of the Equipment subsequent to ORIX's taking possession thereof pursuant to Section 20.1 (ii) shall (a) be applied to the reimbursement of ORIX and Lessor's expenses incurred in connection therewith, including legal fees (and a reasonable allocation of compensation, costs and expenses of internal counsel, based upon time spent); (b) be credited to amounts of Stipulated Loss Value and all other Rent owing by Lessee hereunder; and (c) be applied to the payment of all fees, expenses, and obligations owed by Lessee to Lessor in connection with this Lease. Any such amounts remaining shall be paid to Lessee. Lessee shall immediately pay to ORIX any deficiency in (a) and (b) above.

20.3. If Lessor or ORIX elects not to sell, re-lease, or otherwise dispose of all or any part of the Equipment, and holds such Equipment for Lessee for the remaining Term, Lessor and ORIX may recover, in addition to all Rent accrued and unpaid as of the date of Lessor's recovery of possession of the Equipment, the present value, as of such date, of the Rent for the remainder of the Term respecting such Equipment (which Term shall include, for this

5

Master Lease Agreement Number 391

purpose, to the extent applicable, any agreed upon extensions and renewals which would, in the absence of an Event of Default, automatically extend the Term upon Lessee's failure to exercise any option to purchase contained in any addenda or Rider hereto). Present value shall be computed using a discount rate equal to the Prime Rate in effect on the Acceptance Date.

20.4. Time of performance of Lessee's obligations hereunder is of the essence. All remedies of Lessor and ORIX hereunder are cumulative, and may, to the extent permitted by law, be exercised concurrently or separately, and the exercise of any one remedy shall not be deemed to be an election of such remedy to the exclusion of any other remedy or to preclude the exercise of any other remedy at any other time. Failure on the part of Lessor to exercise, or delay in exercising any right or remedy hereunder or ORIX or Lessor's failure at any time to require performance by Lessee of any of the provisions hereof shall not operate as a waiver thereof; nor shall any single or partial exercise by ORIX o Lessor of any right or remedy hereunder preclude any other further exercise thereof or the exercise of any other right or remedy.

Section 21. Further Assurances. Lessee shall execute and deliver to Lessor, upon Lessor's request, such instruments and assurances as Lessor deems necessary or advisable for the confirmation or perfection of the Lease and Lessor's rights hereunder.

Section 22. Power of Attorney Lessee hereby irrevocably appoints ORIX as its attorney-in-fact (coupled with an interest) and agrees that, to the extent that ORIX may lawfully do so, ORIX may execute, file or record, as applicable, on behalf of Lessee, UCC financing statements providing notice of this Lease and ORIX and Lessor's security interest in the Equipment granted herein. Lessee further hereby irrevocably appoints ORIX as its attorney-in-fact (coupled with an interest) and agrees that, at any time when any Event of Default, or any event which with notice or the passage of time or both would constitute an Event of Default, shall have occurred and be continuing, ORIX may perform (but ORIX shall not be obligated to and shall incur no liability to Lessee or any third party for failure so to do, and without such performance constituting a cure or waiver of Lessee's failure to so perform) any act which Lessee is obligated by this Lease to perform, and to exercise such rights and powers as Lessee might exercise with respect to the Equipment. Lessee agrees it shall be bound by any judgment made or acts taken by ORIX hereunder absent Lessor's gross negligence or willful misconduct. Lessee agrees to reimburse ORIX upon demand for any reasonable costs and expenses, including attorney's fees, ORIX may incur while acting as Lessee's attorney in fact under this Lease. No action of ORIX taken while acting as Lessee's attorney-in-fact under this Lease shall be considered as a waiver of any right accruing to ORIX or Lessor on account of the occurrence of any Event of Default. Lessee shall fully cooperate and adjust for clerical errors in connection with the Lease documents if deemed necessary or desirable in the reasonable discretion of Lessor.

Section 23. No Agency. Lessee acknowledges and agrees that neither the manufacturer nor supplier of the Equipment, nor any salesman, representative or other agent of the manufacturer or supplier of the Equipment, is an agent of Lessor or ORIX. No salesman, representative or agent of the manufacturer or supplier is authorized to waive or alter any term or condition of this Lease or any Schedule and no representation as to the Equipment or any other matter by the manufacturer or supplier shall in any way affect Lessee's duty to pay Rent and perform its other obligations as set forth in this Lease or any Schedule.

Section 24. Financial Statements and Reports.

24.1 Lessee shall maintain separate, accurate and complete books and records pertaining to the Equipment in accordance with generally accepted accounting principles and consistent with that applied in the preparation of Lessee's financial statements. Unless not otherwise publicly available, Lessee shall furnish, or cause to be furnished, to ORIX the following: (i) within one hundred (100) days after the end of each fiscal year, audited consolidated and consolidating financial statements of the Lessee as of the end of such year, fairly presenting the Lessee's financial position, which statements shall consist of a balance sheet and related statements of income, retained earnings and cash flow, and which shall be audited by independent certified public accountants satisfactory to ORIX and accompanied by (A) the unqualified opinion of such accountants and (B) together with a certification by the applicable senior financial officer of Lessee to the effect that such financial statements fairly present, in all material respects, the financial position of the Lessee, and their results of operation and cash flows; and (ii) within sixty (60) days after the end of each fiscal quarter, (A) unaudited financial statements of the Lessee as of the end of such fiscal quarter, fairly presenting the Lessee's financial position at the end of such fiscal quarter, (A) unaudited financial statements of the Lessee as of the end of such fiscal quarter, fairly presenting the Lessee's financial position and (B) unaudited consolidated and consolidating financial statements of Lessee, fairly presenting the Lessee's and its consolidated subsidiaries' financial position, each of which statements shall consist of a balance sheet and related statements of income and retained earnings covering the period from the end of the immediately preceding fiscal year to the end of such fiscal quarter. Notwithstanding anything herein to the contrary, if Lessee fails to make this information available on a public medium with the time period required by any federal or state agencies (including but not limited to the Securities and Exchange Commission), upon notice from ORIX, Lessee shall be required to immediately comply with the requirements of this Section 24.1. In complying with this Section 24.1, all such financial statements required to be provided to ORIX, shall be accompanied by a compliance certification by a senior financial officer of Lessee pursuant to which such officer shall certify that no Event of Default, or event which with notice or the passage of time, or both, would constitute an Event of Default, has occurred and is continuing or, if any such Event of Default or event shall have occurred and be continuing, describing the nature and period of existence thereof and what action Lessee has taken or proposes to take with respect thereto.

24.2. Within 100 days after the end of each fiscal year, Lessee shall provide, or cause to be provided, to ORIX a report on the Aircraft, each Engine and each Propeller in the form of Annex I attached hereto.

Section 25. Lessor and ORIX Expenses. Lessee shall pay Lessor and ORIX on demand all charges, costs, expenses and attorney's fees incurred by Lessor and ORIX in enforcing any of the terms, conditions, or provisions hereof or in protecting ORIX and Lessor's rights herein. Lessee's obligation hereunder includes all such costs and expenses expended by Lessor or ORIX (a) prior to filing of an action, (b) in connection with an action which is dismissed, and (c) in the enforcement of any judgment. Lessee's obligation to pay ORIX and Lessor's attorneys' fees incurred in enforcing any judgment is a separate obligation of Lessee, severable from Lessee's other obligations hereunder, which obligation will survive such judgment and will not be deemed to have been merged into such judgment.

Section 26. Purchase Option. See the Purchase Option Rider, which shall control.

Section 27. Return of Equipment. See the Lease Return Provisions Rider, which shall control.

Section 28. Notices. All notices, requests, demands, consents, instructions or other communications to or upon Lessor, Lessee or ORIX under the Lease shall be in writing and mailed or delivered to each party at its address set forth in the first paragraph hereof (or to such other address for any party as indicated in

6

Master Lease Agreement Number 391

any written notice given by that party to the other party). All such notices and communications shall be effective (i) when sent for priority overnight delivery by Federal Express or other overnight courier of nationally recognized standing, on the business day following the deposit with such courier; (ii) when mailed, by certified mail, return receipt requested, postage prepaid and so addressed through the United States Postal Service, upon receipt; and (iii) when delivered by hand, upon delivery. In any case where the Lease authorizes or requires notices, requests, demands or other communication by Lessee to Lessor or ORIX, Lessor or ORIX may conclusively presume that anyone purporting to be a party designated in any borrowing resolution, incumbency certificate or in any other such document delivered by Lessee to Lessor or ORIX, is such a party.

Section 29. Miscellaneous. (i) Capitalized terms used in this Master Lease Agreement and not otherwise defined herein, shall have the same meaning set forth in any Schedule. (ii) If at any time any provision of this Lease is or becomes illegal, invalid or unenforceable in any respect under the law of any jurisdiction, neither the legality, validity or enforceability of the remaining provisions of this Lease nor the legality, validity or enforceability of such provision under the law of any other jurisdiction shall in any way be affected or impaired thereby. (iii) This Lease may be executed in any number of identical counterparts, any set of which signed by all the parties shall be deemed to constitute a complete, executed original for all purposes. (iv) If the Lessee consists of more than one party, the liability of all of such parties constituting Lessee under this Lease shall be joint and several. (v) This Master Lease Agreement together with each Schedule, is the complete and exclusive statement and agreement between the parties with respect to the subject matter hereof. This Lease is intended by Lessor, ORIX and Lessee to be the final, complete, and exclusive expression of the agreement between them. Any amendment, consent or waiver of any provision of this Lease and any consent to any departure by Lessee from any provision of this Lease shall be effective only by a writing signed by all parties hereto, and shall bind and benefit Lessee, ORIX and Lessor and their respective successors and assigns. (vi) Nothing expressed in or to be implied from this Lease is intended to give, or shall be construed to give, any person, other than Lessor, ORIX and Lessee and their permitted successors and assigns, any benefit or legal or equitable right, remedy or claim under or by virtue of this Lease. (viii) One originally executed copy of this Master Lease Agreement shall be denominated "Originally Executed Copy No. 1 of ___ originally executed copies" and such copy shall be retained by ORIX. If more than one copy of the Master Lease Agreement is executed by Lessee, ORIX and Lessee, all such other copies shall be numbered consecutively with numbers greater than one (1). Only transfer of possession of the originally executed copy denominated "Originally Executed Copy No. 1" shall be effective for purposes of perfecting an interest in this Master Lease by possession. (ix) The headings in the Master Lease Agreement are for purposes of reference only and shall not affect the meaning or construction of any provision of this Master Lease Agreement. (x) All the representations, warranties and covenants of Lessee contained herein shall survive the execution and delivery of this Master Lease Agreement and shall remain in full force and effect until all of Lessee's obligations hereunder shall be satisfied.

Section 30. Governing Law, Venue and Service of Process.

30.1. The parties hereto agree that the validity, interpretation and enforcement of this Lease shall be governed by and construed in accordance with the laws of the State of New York without giving effect to the conflict of law principles thereof, including all matters of construction, validity and performance, regardless of the location of the Equipment or the state of incorporation or principal place of business of Lessee. Any legal action or proceeding with respect to this Lease shall be brought in the courts of New York, and, by execution and delivery of this Lease, Lessee hereby accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts. Lessee hereby irrevocably waives, in connection with any such action or proceeding any objection, including, without limitation, any objection to the laying of venue or based on the grounds of forum non conveniens, that it may now or hereafter have to the bringing of any such action or proceeding in such respective jurisdictions. Lessee irrevocably consents to the service of process of any of the aforementioned courts in any such action or proceeding by the mailing of copies thereof by registered or certified mail, postage prepaid, to the Lessee at the address for it specified in the first paragraph of this Lease. Nothing herein shall affect the right of Lessor or ORIX to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against the Lessee in any other jurisdiction, subject in each instance to the provisions hereof with respect to rights and remedies.

30.2. LESSEE BY ITS ACCEPTANCE OF THIS LEASE HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVES (TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW) THE RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER IN CONTRACT, TORT OR OTHERWISE, RELATING DIRECTLY OR INDIRECTLY TO THE EQUIPMENT AND THE LEASE, OR ANY ACTS OR OMISSIONS OF LESSOR OR ORIX, ITS OFFICERS, EMPLOYEES, DIRECTORS OR AGENTS IN CONNECTION THEREWITH. LESSOR, ORIX AND LESSEE ACKNOWLEDGE THAT THIS WAIVER IS A MATERIAL INDUCEMENT TO ENTER INTO A BUSINESS RELATIONSHIP, THAT EACH PARTY HAS RELIED ON THE WAIVER ENTERING INTO THIS LEASE AND THAT EACH WILL CONTINUE TO RELY UPON THE WAIVER IN THEIR RELATED FUTURE DEALINGS. THIS WAIVER IS INFORMED AND FREELY MADE. LESSEE WARRANTS AND REPRESENTS THAT IT HAS REVIEWED THIS WAIVER WITH ITS LEGAL COUNSEL AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS JURY TRIAL RIGHTS FOLLOWING CONSULTATION WITH LEGAL COUNSEL.

Section 31. Waiver. To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a lessee by such applicable law (including but not limited to Article 2A of the UCC) to: (i) cancel this Lease; (ii) repudiate this Lease; (iii) reject the Equipment; (iv) revoke acceptance of the Equipment; (v) recover damages from Lessor or ORIX for any breaches of warranty; (vi) grant a security interest in the Equipment in Lessee's possession or control for any reason; (vii) deduct all or any part of any claimed damages resulting from ORIX or Lessor's default, if any, under this Lease; (viii) accept partial delivery of the Equipment; (ix) "Cover" by making any purchase or lease of, or contract to purchase or lease, Equipment in substitution for that due from ORIX or Lessor; (x) recover any special, incidental or consequential damages associated with this Lease; and (xi) obtain specific performance, replevin, detinue, sequestration, claim and delivery or the like for any Equipment identified in this Lease. To the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor or ORIX to sell, lease or otherwise use any Equipment in mitigation of ORIX or Lessor's damages as set forth in Section 19 of this Lease.

Section 32. TO BE RESERVED.

LESSEE ACKNOWLEDGES THAT LESSEE HAS READ AND UNDERSTANDS THIS MASTER LEASE AGREEMENT AND AGREES TO BE BOUND BY ITS TERMS AND CONDITIONS.

7

Master Lease Agreement Number 391

IN WITNESS WHEREOF, the parties hereto have executed or caused this Master Lease Agreement to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

_____
Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY

_____
Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association
as Trustee under the Trust Agreement
dated March 28, 2001

_____
Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

_____
Name: _____
Title: _____

WITNESS:

_____
Name: _____

WITNESS:

_____
Name: _____

EXECUTION PAGE TO THE MASTER LEASE AGREEMENT

8

...er Lease Agreement Number 391

IN WITNESS WHEREOF, the parties hereto have executed or caused this Master Lease Agreement to be duly executed by their duly authorized ...ers as of the date first above written.

...SEE:

...LLYWOOD ENTERTAINMENT CORPORATION

Name: James Marcum
...: Executive Vice President – CFO

...LLYWOOD MANAGEMENT COMPANY

Name: Donald J. Ekman
...: Executive Vice President

WITNESS:

Name: Brad Williams

WITNESS:

Name: Brad Williams

...SSOR:

...ELLS FARGO BANK NORTHWEST, N.A.
...a First Security Bank, National Association
...Trustee under the Trust Agreement
...ed March 28, 2001

...me: _____
...le: _____

...RIX:

...RIX FINANCIAL SERVICES, INC.

...ame: _____
...tle: _____

EXECUTION PAGE TO THE MASTER LEASE AGREEMENT

9

Master Lease Agreement Number 391

      IN WITNESS WHEREOF, the parties hereto have executed or caused this Master Lease Agreement to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

Name: _____

Title: _____

HOLLYWOOD MANAGEMENT COMPANY

Name: _____

Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____Brett R. King_____

Title: _____Vice President_____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____

Title: _____

WITNESS:

Name: _____

WITNESS:

Name: _____

EXECUTION PAGE TO THE MASTER LEASE AGREEMENT

8

MASTER LEASE SCHEDULE NO. 1
TO
MASTER LEASE AGREEMENT NO. 391
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Master Lease Schedule ("Schedule") is made and entered into as of the 31st day of May, 2002 ("Execution Date"), by and among Wells Fargo Bank Northwest, N.A. f/k/a First Security Bank, National association ("Wells Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial Services, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a New York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon corporation, and Hollywood Management Company, an Oregon corporation (collectively, "Lessee").

Only transfer of possession by Lessor of the originally executed copy of this Master Lease Schedule denominated "Originally Executed Copy No. 1" shall be effective for purposes of perfecting an interest in this Schedule by possession.

The Equipment described below is hereby leased on the terms and conditions set forth herein and in the above-referenced Master Lease Agreement, the terms and conditions of which are incorporated herein by reference. This Schedule is intended to and shall constitute an independently assignable and separate lease agreement existing upon the terms and conditions stated in the Master Lease Agreement, the Schedule and in any riders and related documents. Capitalized terms used in this Schedule and not otherwise defined herein shall have the same meaning as set forth in the Master Lease Agreement.

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THIS MASTER LEASE SCHEDULE, THE PARTIES AGREE AS FOLLOWS:

Section 1. Equipment.

Section 1.1. Equipment. "Equipment" mean, collectively, the aircraft ("Aircraft"), equipment and other personal property described oEXHIBIT A, attached hereto and made a part hereof, including, but not limited to, the engines described ofEXHIBIT A ("Engines"), the propellers described on EXHIBIT A ("Propellers"), the aircraft documents described on EXHIBIT A("Aircraft Documents"), any component, furnishing or equipment (other than a complete Engine or Propeller) affixed to, related to or used in connection with any of the foregoing ("Parts")together with all attachments, replacements, parts, spare parts, substitutions, upgrades, repairs, accessions and accessories thereof or thereto.

Section 1.2. Equipment Location. During the Term of the Schedule, the Equipment shall be based at the following location(s) (the "Base"): Portland-Hillsboro Airport and the Las Vegas International Airport (McCarren).

Section 1.3. Equipment Cost. The aggregate cost of the Equipment is Four Million Five Hundred Thousand and No/100 Dollars ($4,500,000.00) ("Equipment Cost"). The Equipment Cost is the purchase price of the Equipment as reflected in the contract, invoices, bill of sale or other purchase document(s), as applicable, by which Lessor has acquired the Equipment.

Section 2. Term.

The Term of the Schedule shall be from the Delivery Date, as defined in the Delivery and Acceptance Certificate, to the first day of the first calendar month following the Execution Date ("Term Commencement Date"), plus sixty (60) months. The Term of the Schedule shall expire upon the 1st day of June, 2007 ("Expiration Date"), unless either terminated earlier pursuant to the terms and conditions of the Schedule or renewed pursuant to Section 5 of this Schedule. The word "Term" shall mean collectively, the initial Term and all renewal Terms. If the Term of the Schedule is renewed, then the term "Expiration Date" shall mean the last day of the Term as in effect following such renewal.

Section 3. Rent.

Section 3.1. Basic Rent. Rent payments during the Term shall be in an amount equal to the sum of the (a) Lease Amortization (hereafter defined), and (b) Lease Rate (hereafter defined) (collectively, (a) and (b) shall be referred to as "Rent"). "Lease Amortization" shall mean Rental payments in the monthly amount of Seventy Five Thousand and No/100 Dollars ($75,000.00) from the Rental Commencement Date (hereafter defined) through and including the thirtieth (30th) Rental payment date, plus all applicable taxes, and Rental payments in the monthly amount of Fifty Two Thousand Five Hundred and No/100 Dollars ($52,500.00) from and including the thirty first (31st) Rental payment date through and including the sixtieth (60th) Rental payment date of the Term, plus all applicable taxes. "Lease Rate" shall mean the sum of (a) interest at the "One Month LIBOR", hereinafter defined, plus (b) a margin of three and one quarter percent (3.25%) per annum. Rent shall be due and payable in arrears on the first (1st) day of each consecutive calendar month during the Term, commencing upon the 1st day of July, 2002 ("Rent Commencement Date") and terminating upon the 1st day of June, 2007. For purposes of this Schedule, the term "One Month LIBOR" means the variable rate of interest determined by Lessor and adjusted monthly on each Rental payment date, beginning with the Term Commencement Date, which rate shall be equal to the one (1) month rate for "London Interbank Offering Rates" as published in the Money Rates Section of the Wall Street Journal, or such other recognized source of One Month LIBOR as designated by Lessor, two London Interbank Offering Rates become unavailable at any time during the Term of the Lease, or another methodology becomes necessary, Lessor shall select and designate a substitute index rate and provide notice to Lessee. The Lease Rate hereunder shall be calculated on the outstanding daily Lease Balance (as hereafter defined) on the basis of a three hundred sixty (360) day year for the actual number of days elapsed. For purposes hereof, "LIBOR Business Day" shall mean any day other than a Saturday, Sunday or a day on which commercial banks in Atlanta, Georgia or London, England are required or authorized to close for domestic or international business including dealings in U.S. dollar deposits.

*Section 3.2. Application.* All Rental payments shall be applied first to the Lease Rate, and then to the Lease Balance. For purposes hereof, "Lease Balance" shall mean the Equipment Cost less any payments of Lease Amortization when actually received by Lessor in good sufficient funds.

*Section 3.3. Interim Rent.* In addition to the Rent payable pursuant to Section 3.1, Lessee shall pay to ORIX as interim rent, zero and No/100 Dollars ($0.00) per diem, from the Delivery Date, extending through, but excluding, the Term Commencement Date.

### Section 4. End of the Term Options.

*Section 4.1. End of Term Options.* At the end of any Term of this Schedule, Lessee shall have the following options: (a) renew the Term of the Schedule pursuant to the terms of Section 5 hereof; or (b) purchase the Equipment pursuant to the terms of the Purchase Option Rider; or (c) return the Equipment pursuant to the terms of the Lease Return Provisions Rider.

### Section 5. Renewal.

Notwithstanding anything contained in the Master Lease Agreement to the contrary, provided that no Event of Default or event which, with the giving of notice, the passage of time or both, would constitute an Event of Default, shall have occurred and be continuing, Lessee shall have an option to renew the Term of the Schedule. Unless ORIX receives written notice that Lessee does not desire that the Schedule renew ("Non-renewal Notice"), the Term of the Schedule shall automatically renew on a month to month basis without any action on the part of ORIX, Lessor or Lessee under the same terms and conditions as set forth herein. Such month to month renewal period ("Renewal Period") shall continue for a period of time determined as follows: (a) If ORIX receives a Non-renewal Notice during the initial Term, the Renewal Period shall be determined by adding 180 days to the first Rent payment date following ORIX's receipt of the Non-renewal Notice and then subtracting the remaining number of days left in the initial Term; (b) If ORIX receives a Non-renewal Notice after the initial Term, the Renewal Period shall be determined by adding 180 days to the first Rent payment date following ORIX's receipt of the Non-renewal Notice. In any event, the Expiration Date of any Renewal Period shall be on a Rent payment date. Notwithstanding the foregoing, Lessee may not provide ORIX with the Non-renewal Notice at any time prior to the 54th Rent payment date. In the event that Lessee delivers to ORIX a Non-renewal Notice, if at the Expiration Date of the Schedule, Lessee desires to exercise any purchase, return, early buyout or early termination option provided in a rider to this Schedule with respect to the Equipment, if applicable, then concurrently with its delivery of such Non-renewal Notice, Lessee shall notify ORIX of its intention to exercise such option.

### Section 6 Entire Agreement.

This Schedule and the Master Lease Agreement constitutes the complete and entire agreement between the parties hereto with respect to the subject matter hereof, superceding all proposals and prior agreements, oral or written, and all other communications between the parties with respect to the subject matter hereof. This Schedule and the Master Lease Agreement are intended by the parties to be the final, complete and exclusive expression of the agreement between them. Any amendment or waiver of any provision of this Schedule or the Master Lease Agreement shall be effective only by a writing signed by the parties hereto. Any departure by Lessee from any provision of this Schedule or the Master Lease Agreement shall be effective only by a writing signed by the parties hereto.

### Section 7. Reaffirmation.

The parties reaffirm all terms and conditions of the Master Lease Agreement, and, except as expressly provided or modified hereby, all such terms and conditions shall remain in full force and effect.

### Section 8. Truth in Leasing Clause.

NOTE: THIS CLAUSE IS REQUIRED UNDER TITLE 14 OF THE U. S. CODE OF FEDERAL REGULATIONS, PART 91.23.

FOR THE TWELVE MONTHS PRECEDING THE DATE OF THIS LEASE SUPPLEMENT (OR THAT PORTION THEREOF DURING WHICH THE AIRCRAFT HAS BEEN SUBJECT TO U.S. REGISTRATION), THE AIRCRAFT LEASED HEREUNDER HAS BEEN MAINTAINED AND INSPECTED IN ACCORDANCE WITH FEDERAL AVIATION REGULATIONS PART 91.

THE LESSEE CERTIFIES THAT IT IS RESPONSIBLE FOR THE AIRCRAFT'S STATUS OF COMPLIANCE WITH APPLICABLE MAINTENANCE AND INSPECTION REQUIREMENTS AS SET FORTH UNDER THE FAA REGULATIONS APPLICABLE TO LESSEE'S USE AND OPERATION OF THE AIRCRAFT.

UPON EXECUTION OF THIS SCHEDULE, AND DURING THE TERM HEREOF, THE LESSEE, WHOSE NAME AND ADDRESS IS: HOLLYWOOD ENTERAINMENT CORPORATON AND HOLLYWOOD MANAGEMENT COMPANY, 9275 SW PEYTON LANE, WILSONVILLE, OREGON 97070, ACTING BY AND THROUGH THE INDIVIDUAL EXECUTING THIS INSTRUMENT, CERTIFIES THAT LESSEE IS SOLELY RESPONSIBLE FOR OPERATIONAL CONTROL OF THE AIRCRAFT AND CERTIFIES AND AGREES TO COMPLY WITH ALL APPLICABLE FAA REGULATIONS ISSUED DURING THE TERM OF THIS LEASE SUPPLEMENT. THE LESSEE IS HEREBY ADVISED THAT AN EXPLANATION OF FACTORS BEARING ON OPERATIONAL CONTROL AND PERTINENT FAA REGULATIONS CAN BE OBTAINED FROM THE NEAREST FAA FLIGHT STANDARDS DISTRICT OFFICE, GENERAL AVIATION DISTRICT OFFICE OR AIR CARRIER DISTRICT OFFICE.

LESSEE AGREES TO KEEP A COPY OF THE SCHEDULE, AS SUPPLEMENTED BY THIS LEASE SUPPLEMENT, IN THE AIRCRAFT AT ALL TIMES DURING THE TERMS OF THIS LEASE SUPPLEMENT.

[Signatures Continued Upon Next Page]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION                WITNESS:

Name: _____                  Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY                       WITNESS:

Name: _____                  Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE TO THE MASTER LEASE SCHEDULE

3          —

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY

Name: _____
Title: _____

WITNESS:

Name: _____

WITNESS:

Name: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: ~~Brett R. King~~
Title: ~~Vice President~~

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE TO THE MASTER LEASE SCHEDULE

LESSEE AGREES TO KEEP A COPY OF THE SCHEDULE, AS SUPPLEMENTED BY THIS LEASE SUPPLEMENT, IN THE AIRCRAFT AT ALL TIMES DURING THE TERMS OF THIS LEASE SUPPLEMENT.

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

Name: _James A. Marcum_

Title: _Executive Vice President_

HOLLYWOOD MANAGEMENT COMPANY

Name: _Donald J. Ekman_

Title: _Executive Vice President_

WITNESS:

Name: _Brad Williams_

WITNESS:

Name: _Brad Williams_

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

Exhibit A

## DESCRIPTION OF AIRCRAFT

One (1) 1968 Gulfstream II, Model G-1159 Aircraft including but not limited to the following components:

(1) Airframe:  FAA Registration Number N227TS, manufacturer's Serial Number 27;

(2) Engines: Two (2) Rolls Royce Spey Model MK511-8 engines bearing, respectively, manufacturer's serial numbers 8594 and 8564 (whether such engines shall be installed on or attached to said Airframe or any other airframe);

(3) Any and all parts, including without limitation, appliances, instruments, appurtenances, furnishings or other equipment or property whether such parts are installed on or attached to said Airframe and Engines or otherwise, including, without limitation, all parts installed on or attached to said Airframe or Engines as the result of any alteration, modification, substitution, improvement or addition; and any and all avionics and accessories, including but not limited to those described on Schedule II attached hereto and made a part hereof;

(4) Any and all Aircraft Documents, including without limitation, the airworthiness certificate for the aircraft described hereinabove; any and all log books, records, manuals, and other documents required by the Federal Aviation Administration pertaining to the Aircraft and the equipment described in (1) through (3) above, whether now leased or hereafter created; all maintenance and service contracts existing with respect to the Aircraft, the Engines, the parts described hereinabove, and the Propellers; all manufacturers' warranties existing with respect to the Aircraft, the Engines, the parts described hereinabove and the Propellers; and all other books, records and contracts pertaining to the Aircraft, the Engines, the parts described hereinabove and the Propellers.

Aircraft Locations:

Hillsboro-Portland Airport
2050 NE 25th Avenue
Hillsboro, OR 97124

Las Vegas International Airport (McCarren)
5757 Wayne Newton Boulevard
Las Vegas, NV 89119

Schedule II

DEBTOR: HOLLYWOOD ENTERTAINMENT CORPORATION

Avionics and other Accessories:

Auxiliary Power Unit Times and Cycles (as of April 4, 2002)
Auxiliary Power Unit- Garrett GTCP36-6      2,552      Time Since New
Serial Number P-34791                       1,318      Hobbs Time

Equipment Specifications:

Avionics:

| | |
|---|---|
| COMM Radios | Dual Collins VHF-22Cs |
| NAV Receivers | Dual Collins VIR-32s |
| DME Receivers | Dual Collins DME-42s |
| ADF Receivers | Dual Collins ADF-60s |
| Transponders | Dual Bendix/King MST67As |
| Radio Altimeter | One Collins 860F-1 |
| Weather Radar | One RCA RT-4001 |
| Flight Management System | Dual Universal UNK-1K |
| Long Range Nav | Dual Global GNS-500s |
| Long Range Nav | One Litton LTN-72R |
| Auto Pilot | One Sperry SPG-50 |
| Flight Director | Dual Sperry FZ-501 system |
| HF Radio | Dual Bendix-King KAC-950 |
| Audio Control Panels | Dual Baker M1045 |

Additional Avionics Options:

| | |
|---|---|
| TCAS II | One AlliedSignal |
| GPWS | One AlliedSignal |
| Standby Attitude Indicator | One Jet A1-804E |
| Flite Phone | One Magnastar C-2000 |

Schedule II (Continued)

DEBTOR: HOLLYWOOD ENTERTAINMENT CORPORATION

Additional Features:

Aviation Partner Winglets
8.33 Approved
MNPS Authorization 3/31/2000
Dual Marker Beacons
Dual Angle of Attack indicators
One Fairchild A100 Cockpit Voice Recorder
Dravtron Clock co-pilot
One Cannon C-5000 Fax Machine
One Panasonic Cassette Player
One JVC VHF Changer
One Defense Technology Intrusion System

Interior Specifications:

Fourteen (14) passenger interior, Two (2) 2-place club seats, one (1) 4-place club arrangement, Two (2) 3-place divan.  Behind the passenger seats is a full galley, which is in good condition. The lavatory is located behind the galley and incorporates a vanity.

Exterior Specifications:

Paint Colors: Fuselage is white with three 5 inch wide stripes under the window line. The stripes are three tones of brown.

Exhibit A Continued

Aircraft Documents

The airworthiness certificate for the Aircraft; all aircraft documents, logs, records and other documents required by the Federal Aviation Administration; all maintenance and service contracts existing with respect to the Aircraft, the Engines and the Propellers; all manufacturers' warranties existing with respect to the Aircraft, the Engines and the Propellers; and all other books, records and contracts pertaining to the Aircraft, the Engines and the Propellers.

PURCHASE OPTION RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Purchase Option Rider ("Rider") is made and entered into as of the 31st day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. f/k/a st Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial rvices, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a ew York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon Corporation, and Hollywood Management Company, an Oregon rporation (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES GREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1 Schedule").

Provided that no Event of Default pursuant to Section 19(i) of the Master Lease Agreement has occurred and is continuing, Lessee shall have an option purchase all of Lessor's right, title and interest, in and to all, but not less than all, the Equipment ("Purchase Option") on the Expiration Date of the Term including, if the initial Term of the Schedule is renewed, the Expiration Date in effect following such Renewal Period). Lessee shall exercise this Purchase Option by providing ORIX with written notice ("Purchase Option Notice") on or subsequent to the 54th Rent payment date ("Notice Date"). ORIX shall not e obligated to accept such notice, nor shall Lessee have the ability to exercise the Purchase Option, prior to such Notice Date. In the event that Lessee elivers to ORIX a Purchase Option Notice, then concurrently with its delivery of such Purchase Option Notice, Lessee shall further deliver to ORIX the Non-enewal Notice.

Each Item of Equipment shall be purchased for an amount equal to the greater of either (a) the Fair Market Value (hereafter defined) of such Equipment as of the Expiration Date or (b) fifteen percent (15%) of the original Equipment Cost of all Equipment. In addition to the purchase price of the Equipment as identified above, Lessee shall pay any and all sales, use, property, or excise taxes on or measured by such sale and any other expenses of transfer (collectively all of the foregoing shall be referred to herein as the "Aggregate Purchase Price"). Lessee shall pay the Aggregate Purchase Price to ORIX not later than the Expiration Date.

As used herein, the term "Fair Market Value" shall mean, with respect to such Equipment, an amount as agreed upon in writing by ORIX and Lessee at least one hundred and twenty (120) days before the Expiration Date or, failing such agreement, the amount at which all the Equipment would be exchanged between a willing buyer and willing seller on a retail basis, neither being under compulsion and each having reasonable knowledge of all relevant facts, and assuming such Equipment is to be used in-place and is in the physical condition in which it must be maintained and returned pursuant to the Schedule, as determined by an appraisal, at Lessee's expense, from an independent qualified appraiser selected by ORIX and furnished not later than ninety (90) days prior to the Expiration Date.

If for any reason whatsoever, Lessee does not exercise its Purchase Option as contained in this Rider, then all of the terms and provisions of the Schedule shall continue in full force and effect until the expiration of the Term thereof.

Lessee agrees that any sale, conveyance or transfer by Lessor pursuant hereto shall be all of Lessor's right, title and interest in and to all Equipment, and shall be AS IS, WHERE IS, WITHOUT WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, INCLUDING WARRANTY OF MERCHANTABILITY AND FITNESS FOR PURPOSE, and Lessee shall hold harmless and indemnify Lessor and ORIX from and against all claims, liabilities, losses and costs alleged against or incurred by Lessor and ORIX, including claims for property damage, personal injury or death to Lessee and/or third parties growing out of or resulting from the ownership, use or possession of the Equipment, or imposed upon, inclined or directed against Lessor and ORIX, whatsoever levied on, on account of, or as a consequence of the sale and purchase of the Equipment.

The terms of this Rider shall supersede and override any conflicting terms of the Schedule relating to the Equipment; otherwise, all of the terms and provisions of the Schedule shall remain in full force and effect.

[Signatures Continued Upon Next Page]

' IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION          WITNESS:

_____          _____
Name: _____          Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY          WITNESS:

_____          _____
Name: _____          Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

_____
Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

_____
Name: _____
Title: _____

EXECUTION PAGE TO THE PURCHASE OPTION RIDER

2

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION        WITNESS:

Name: _____        Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY        WITNESS:

Name: _____        Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____Brett A. King_____
Title: _____Vice President_____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE TO THE PURCHASE OPTION RIDER

2

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION                    WITNESS:

Name: James A. Marcum                                   Name: Brad Williams
Title: Executive Vice President

HOLLYWOOD MANAGEMENT COMPANY                           WITNESS:

Name: Donald S. Ekman                                  Name: Brad Williams
Title: Executive Vice President

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____
Title: _____

EXECUTION PAGE TO THE PURCHASE OPTION RIDER

3

EARLY BUYOUT OPTION RIDER
TO
MASTER LEASE SCHEDULE NUMBER 1
DATED MAY 31, 2002
BY AND AMONG ORIX FINANCIAL SERVICES, INC.,
WELLS FARGO BANK NORTHWEST, N.A.,
AND HOLLYWOOD ENTERTAINMENT CORPORATION AND
HOLLYWOOD MANAGEMENT COMPANY

This Early Buyout Option Rider ("Rider") is made and entered into as of the 31st day of May, 2002, by and among Wells Fargo Bank Northwest, N.A. /a First Security Bank, National Association ("Wells, Fargo"), as Trustee under the Trust Agreement dated as of March 28, 2001, between ORIX Financial rvices, Inc. and such Trustee, together with its successors and assigns (Wells Fargo, in such capacity, "Lessor"), ORIX FINANCIAL SERVICES, INC., a ew York corporation ("ORIX"), and Hollywood Entertainment Corporation, an Oregon Corporation, and Hollywood Management Company, and Oregon rporation (collectively, "Lessee").

IN CONSIDERATION OF THE MUTUAL AGREEMENTS SET FORTH IN THE MASTER LEASE SCHEDULE NUMBER 1, THE PARTIES GREE AS FOLLOWS:

Capitalized terms used in this Rider and not otherwise defined herein, shall have the same meaning as set forth in the Master Lease Schedule Number 1 'Schedule").

Provided that no Event of Default pursuant to Section 19(i) of the Master Lease Agreement has occurred and is continuing, Lessee, upon written notice ceived by ORIX from Lessee not less than one hundred eighty (180) days and not more than two hundred seventy (270) days prior to the twenty fourth chedule through and including such twenty fourth (24th) Rental payment date under Master Lease Schedule Number 1, provided that all rental payments, late charges and other amounts owing under the 24th) Rental payment date under Master Lease Schedule Number 1, provided that all rental payment date have been paid by Lessee to ORIX, Lessee may terminate the Schedule with espect to all, but not less than all, the Equipment and purchase all of Lessor's right, title and interest therein ("First Early Buyout Option"). The Equipment hall be purchased for an amount equal to (a) 61.67% of the original Equipment Cost (as defined in the Schedule) of all Equipment, plus (b) any sales, use, roperty or excise taxes on or measured by such sale and any other expenses of transfer (all of the foregoing being collectively referred to herein as the "First Early Buyout Option Purchase Price"). Lessee shall pay the First Early Buyout Option Purchase Price not later than the last day of the month in which such wenty fourth (24th) rental payment date occurs.

Provided that no Event of Default or event which, with the giving of notice or lapse of time, or both, would constitute an Event of Default, has occurred and is continuing, and further provided that Lessee did not exercise the First Early Buyout Option, Lessee, upon written notice received by ORIX from Lessee not earlier than the twenty fifth (25th) Rent payment date and not more than one hundred eighty days prior to the forty eighth (48th) Rental payment date under Master Lease Schedule Number 1, provided that all rental payments, late charges and other amounts owing under the Schedule through and including such forty eighth (48th) Rental payment date have been paid by Lessee to ORIX, Lessee may terminate the Schedule with respect to all, but not less than all, the Equipment and purchase all of Lessor's right, title and interest therein ("Second Early Buyout Option"). The Equipment shall be purchased for an amount equal to (a) 30.147% of the original Equipment Cost (as defined in the Schedule) of all Equipment, plus (b) any sales, use, property or excise taxes on or measured by such sale and any other expenses of transfer (all of the foregoing being collectively referred to herein as the "Second Early Buyout Option Purchase Price"). Lessee shall pay the Second Early Buyout Option Purchase Price not later than the last day of the month in which such forty eighth (48th) rental payment date occurs.

If for any reason whatsoever, Lessee does not exercise its First Early Buyout Option or its Second Early Buyout Option as contained in this Rider, then all of the terms and provisions of the Schedule shall continue in full force and effect until the expiration of the Term thereof.

Lessee agrees that any sale, conveyance or transfer by Lessor pursuant hereto shall be all of Lessor's right, title and interest in and to all Equipment, and shall be AS IS, WHERE IS, WITHOUT WARRANTIES OF ANY KIND, EXPRESSED OR IMPLIED, INCLUDING WARRANTY OF MERCHANTABILITY AND FITNESS FOR PURPOSE, and Lessee shall hold harmless and indemnify Lessor and ORIX from and against all claims, liabilities, losses and costs alleged against or incurred by Lessor and ORIX, including claims for property damage, personal injury or death to Lessee and/or third parties growing out of or resulting from the ownership, use or possession of the Equipment, or imposed upon, inclined or directed against Lessor and ORIX, whatsoever levied on, on account of, or as a consequence of the sale and purchase of the Equipment.

The terms of this Rider shall supersede and override any conflicting terms of the Schedule relating to the Equipment; otherwise, all of the terms and provisions of the Schedule shall remain in full force and effect.

[Signatures Continued Upon Next Page]

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION    WITNESS:

Name: _____        Name: _____
Title: _____

HOLLYWOOD MANAGEMENT COMPANY    WITNESS:

Name: _____        Name: _____
Title: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.,
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____
Title: _____

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____ _F R Rucker_____
Title: _____VP_____

EXECUTION PAGE OF THE EARLY BUYOUT OPTION RIDER

IN WITNESS WHEREOF, the parties hereto have executed or caused this Rider to be duly executed by their duly authorized officers as of the date first above written.

LESSEE:

HOLLYWOOD ENTERTAINMENT CORPORATION

WITNESS:

Name: _____

Title: _____

Name: _____

HOLLYWOOD MANAGEMENT COMPANY

WITNESS:

Name: _____

Title: _____

Name: _____

LESSOR:

WELLS FARGO BANK NORTHWEST, N.A.
f/k/a First Security Bank, National Association,
as Trustee under the Trust Agreement
dated March 28, 2001

Name: _____

Title: _____
       Brett A. King
       Vice President

ORIX:

ORIX FINANCIAL SERVICES, INC.

Name: _____

Title: _____

EXECUTION PAGE OF THE EARLY BUYOUT OPTION RIDER

2